COMMONWEALTH vs. WAYNE CONLEY.

No. 91-P-545.

Suffolk. September 14, 1992. - January 28, 1993.

Present: KASS, SMITH, & PORADA, JJ.

*Witness*, Intimidation. *Assault and Battery. Practice, Criminal*, Instructions to jury, Question by jury, Lesser included offense, Comment by judge. *Self-Defense. Judge.*

At a criminal trial the judge's instructions to the jury on the charge of intimidation of a witness (G. L. c. 268, § 13B) were confusing and likely to mislead the jury, and created a substantial risk of a miscarriage of justice. [52-56]

The judge at a criminal trial was not required to instruct the jury on self-defense where such an instruction was not supported by the evidence and would have been contrary to the theory put forward by the defendant. [58]

At a criminal trial, the judge adequately instructed the jury in the main charge and in supplemental instructions, and the judge's failure to instruct the jury, in accordance with the recommendation in *Commonwealth* v. *Hicks*, 22 Mass. App. Ct. 139, 144-145 (1986), that the supplemental instructions be considered along with the main charge, was not reversible error. [58-59]

The defendant in a criminal case did not demonstrate prejudice from the judge's unusual requirements, ostensibly intended to expedite the trial, or from his disrespectful conduct toward defense counsel, where the number of not guilty verdicts on the more serious charges indicated that the jury were not influenced by the judge's regrettable conduct. [59-62]

INDICTMENTS found and returned in the Superior Court Department on August 18, 1989.

The cases were tried before *John L. Murphy, Jr.*, J.

*Elliot R. Levine* for the defendant.

*Roger L. Michel, Jr.*, Assistant District Attorney, for the Commonwealth.

SMITH, J. The defendant was indicted for the following offenses: (1) aggravated rape, (2) armed burglary, (3) assault

and battery by means of a dangerous weapon, and (4) intimidation of a witness. After a jury trial, he was found not guilty on the indictments charging aggravated rape (and the lesser included charge of rape), armed burglary, and assault and battery by means of a dangerous weapon; he was found guilty of the lesser included offense of assault and battery and of intimidation of a witness. He was sentenced to a term of four to five years at M.C.I., Cedar Junction, on the intimidation of a witness conviction and a term of two and one-half years in a house of correction on the assault and battery conviction, to be served from after the Cedar Junction sentence.

On appeal, the defendant has raised several issues. They include, among others, that the judge erred (1) in the instruction to the jury on the intimidation of a witness charge and (2) in not instructing the jury on the right of self-defense in regard to the lesser included offense of assault and battery. The defendant also claims that the trial judge deprived him of a fair and impartial trial by repeatedly demeaning his counsel in the presence of the jury.

We briefly summarize the testimony of the complainant and of the defendant as background for our analysis of the issues. We shall summarize additional facts as we address each particular issue.

The complainant and the defendant had had a long-standing relationship during which two children were born. According to the complainant, the defendant was abusive, and the relationship broke up. The complainant testified that on July 7, 1989, she was sleeping at her mother's home when she awoke to find the defendant standing over her, nude, and holding a fork to her throat. The defendant then proceeded to rape her. Following the struggle in the bedroom, the pair wound up in the kitchen, where the defendant grabbed scissors, stuck them in the complainant's back, and told her to "get back into the room, I'm not done with you yet." The complainant ran, reached her mother's bedroom door, and screamed for help, but was grabbed and thrown to the floor by the defendant. The defendant got on top of her and tried to hit her with the scissors. The complainant's mother came

out of her room and yelled, "Get off of her. Get off of her." The defendant then jumped up, screamed, "I'm going to kill her one of these days. I'm going to kill her one of these days," and left.

The defendant's version of the events directly contradicted the complainant's testimony. He testified that he happened to meet the complainant at a lounge, and she invited him to her house. While there, they engaged in consensual sex. After making love for a half hour, the defendant became flaccid. That development caused the complainant to ask the defendant whether he had been seeing a young woman named Danielle. According to the defendant, when he admitted that he had been seeing Danielle the complainant became upset and attacked him with a fork.

The defendant testified that he took the fork away from the complainant and, in the process, cut his hand severely. The complainant then apologized, kissed the defendant's hand, and accompanied him to the kitchen, where he started to treat his wound. When he saw how deep it was, he became angry and pushed the complainant to the floor. The complainant's mother appeared and told the defendant to leave; he did so.

1. *The judge's instructions on the charge of intimidation of a witness.* General Laws c. 268, § 13B, as appearing in St. 1970, c. 177, provides in relevant part as follows: "Whoever, directly or indirectly, willfully endeavors by . . . intimidation, force or threats of force, to influence, impede, obstruct, delay or otherwise interfere with any witness . . . in any stage of a . . . criminal proceeding . . . shall be punished . . . ."

The complainant testified that she received a telephone call from the defendant on August 6, 1989, the day that she was to testify in District Court concerning the charges against him. According to the complainant, during that call the defendant told her that if she testified as scheduled, he would come after her.

In his testimony, the defendant admitted that he telephoned the complainant and asked her, for the sake of their children, not to pursue the charges against him. He denied

threatening or otherwise intimidating the complainant in any way.

Under the theory on which the Commonwealth presented its case, it was required to prove beyond a reasonable doubt that (1) the complainant was a witness in a stage of a criminal proceeding, (2) the defendant wilfully endeavored or tried to influence the complainant, (3) he did so by means of intimidation, force, or threats of force, and (4) he did so with the specific intent of influencing the complainant as a witness.

The judge gave the following instruction on the charge of intimidating a witness:

> "The last indictment, which is the third indictment that you have before you, is Indictment 080762. That charges the defendant with what we call intimidation of a witness, which is a violation of General Laws Chapter 268, Section 13B. The part that refers to this indictment reads as follows:
>
> " 'Whoever directly or indirectly willfully tries or endeavors by intimidation, force, or threat of force to influence any witness at any stage of a trial or other criminal proceeding shall be punished.' There is a lot more to the statute, but it is not relevant to this case.
>
> "The Commonwealth must prove three things beyond a reasonable doubt: *that the defendant attempted to influence another person, in this case, [the complainant]; that the person was a witness in any stage of a trial or other criminal proceeding; third, that the defendant did so with the specific intent of influencing that person as a witness.* And specific intent means the same as it did under my prior instruction." (Emphasis added.)

Although the judge read the relevant portions of the statute correctly, he misspoke in regard to the elements that the Commonwealth was required to prove. He did not include the vital element — that the Commonwealth was required to prove that the defendant wilfully endeavored to influence or

otherwise interfere with the witness (the complainant) *by using intimidation, force, or threat of force.* A wilful endeavor to influence a witness, *by itself*, is not a crime. Were it a crime, then a remark by a lawyer to a prospective witness to "tell the truth" would violate the statute. That surely was not the intent of the Legislature.

At the conclusion of the judge's charge, defense counsel approached the judge for the purpose of objecting to the judge's instructions. After an objection to a portion of the judge's charge not relevant to our analysis, the following exchange occurred:

> DEFENSE COUNSEL: "I have other issues in terms of instructions."
>
> THE COURT:       "I have already ruled on that."[1]

The judge then ended the sidebar conference.

Not surprisingly, in view of the confusing instruction on the intimidation of a witness charge, the jury, after deliberating for some time, requested that the judge "define influence." The judge held a conference with the prosecutor and the defense counsel. He then gave the following instruction to the jury:

> "Influence means to exert power over another. In the sense of this indictment, it refers to the act of intimidation. Remember the statute that I read to you. 'Who-

---

[1] We have no idea to what the judge was referring when he made the remark quoted in the main body of the opinion. It is clear, however, that he abruptly cut off defense counsel from any further discussion. Rule 24(b), 378 Mass. 895-896 (1979), of the Massachusetts Rules of Criminal Procedure provides, in pertinent part, that, "[u]pon request, reasonable time shall be given to each party to object to the charge before the jury retires." We think that the judge failed to afford the defendant the "reasonable time" required by the rule. Therefore, because of the judge's actions, we consider the matter as if the defendant had objected to the instruction.

In our ruling, we are supported by what occurred after the jury returned with a request to the judge to "define influence." At the conference with the judge on that question, defense counsel tried to point out the earlier error in the judge's instructions on the intimidation offense, but his attempt was brushed aside by the judge.

ever directly or indirectly willfully tries by intimidation, force, or threats of force to influence any witness.' So it is in that context that we talk about it."

Again, the judge quoted the statute correctly, but this time confused concepts by equating "influence" with "intimidation." The statute clearly states that in order for a violation to take place, the Commonwealth must show that a person willfully endeavored to *influence* a witness *by certain means, including intimidation, force, or threats of force.* "Influence" is not the same as "intimidation." The defendant, however, did not object to the supplemental instruction.

Because the judge cut off the defendant's objections to the main charge, we have ruled that the defendant did, in fact, object to the instruction concerning the intimidation of a witness offense (*supra*, note 1). The defendant, however, should have objected to the supplemental instruction. *Duff* v. *Webster*, 315 Mass. 102, 105 (1943) ("If [defense counsel] felt that the charge as modified was still insufficient or incorrect he should have again called the judge's attention to the matter"). *Commonwealth* v. *Barbosa*, 399 Mass. 841, 844 (1987). *Commonwealth* v. *Sousa*, 33 Mass. App. Ct. 433, 436 (1992). Because defense counsel did not object, we review the alleged error to determine whether it created a substantial risk of a miscarriage of justice. *Commonwealth* v. *Barbosa, supra.* "In so doing, we are guided by the principle that we must view the instructions 'in their entirety, to determine the "probable impact, appraised realistically . . . upon the jury's factfinding function." ' " *Commonwealth* v. *Adorno*, 407 Mass. 428, 430 (1990) (quoting from *Commonwealth* v. *Richards*, 384 Mass. 396, 399-400 [1981], quoting, in turn, from *United States* v. *Wharton*, 433 F.2d 451, 457 [D.C. Cir. 1970]).

In both the main charge and the supplemental instruction, the judge, by accurately quoting the relevant portions of the statute, set out the essential elements of the crime of intimidation of a witness. However, in his explanation of the meaning of the statute, the judge left out an essential element — that in the circumstances of this case, in order to find a viola-

tion of the statute, the jury must find that the endeavor to influence the complainant was by intimidation, force, or threats of force. Thus, his instructions, at best, were "confusing and [were] likely to [mislead] the jury." *Commonwealth* v. *Riccard*, 410 Mass. 718, 724 (1991). Because the jury were left with contradictory instructions "we cannot know whether the jury were guided by the correct or the incorrect portions of the instructions." *Commonwealth* v. *Richards*, 384 Mass. at 403-404, quoting from *Green* v. *United States*, 405 F.2d 1368, 1370 (D.C. Cir. 1968). Further, apart from the contradictory nature of the instructions, the error went to the heart of the defendant's defense to the intimidation of a witness indictment — he admitted that he tried to influence the witness but denied using intimidation, force, or threats of force.

We hold that the error created a substantial risk of a miscarriage of justice, and we reverse the judgment and remand for a new trial.

2. *The failure to charge on the right to self-defense.* At the conference that the judge held with counsel prior to giving his instructions to the jury, he stated that he did not intend to give an instruction on assault and battery as a lesser included offense. Defense counsel did not object because he had not requested such an instruction. He did request an instruction on self-defense, which the judge refused to give. In his subsequent charge to the jury the judge did not give an instruction on assault and battery as a lesser included offense of assault and battery with a dangerous weapon.

After deliberating for some time, the jury returned with a question concerning the indictment that charged the defendant with assault and battery by means of a dangerous weapon. They asked, "What constitutes a right or an excuse?"

The judge held a conference with counsel concerning his response to the jury's question. He informed them that he did not intend to answer the question because "there was no evidence of a right or excuse." The judge then told counsel that he intended to instruct the jury on assault and battery

as a lesser included offense of assault and battery by means of a dangerous weapon. He inquired if they had any objections to his plan. Defense counsel responded that it "might be appropriate if the self-defense instruction is [also] given. . . ." The judge responded that "[t]he self-defense instruction will not be given." The prosecutor agreed to the giving of the lesser included offense instruction. Defense counsel was silent.

The judge then addressed the jury in regard to their question. He told them that "[t]here is no evidence in this case of a right or an excuse, and I am not going to answer that question for you." The judge then proceeded to instruct the jury on assault and battery as a lesser included offense of assault and battery by means of a dangerous weapon. The defendant did not object to the contents of that instruction.

On appeal, the defendant claims that the judge committed error because (1) he refused to instruct on self-defense, (2) he invaded the province of the jury in telling them that "[t]here was no evidence in this case of a right or an excuse . . . ," and (3) he failed to instruct the jury that the supplemental instructions must be considered along with the main charge. There was no error.

There is no question that assault and battery is a lesser included offense of assault and battery by means of a dangerous weapon. *Commonwealth* v. *Dreyer*, 18 Mass. App. Ct. 562, 566 (1984). "A judge is required to charge the jury concerning lesser included offenses if the evidence provides a rational basis for acquitting the defendant of the crime charged and convicting him of the lesser included offense." *Commonwealth* v. *Egerton*, 396 Mass. 499, 503 (1986), quoting from *Commonwealth* v. *Santo*, 375 Mass. 299, 305 (1978). Here, a pair of scissors was the dangerous weapon named in the indictment charging the defendant with assault and battery by means of a dangerous weapon. There was evidence from the complainant that the defendant, in the course of the scissors attack, threw her to the floor. The defendant, in turn, denied the scissors attack but did admit that he pushed the complainant. The jury, therefore, could find that the defend-

Commonwealth *v.* Conley.

ant was not guilty of the greater crime (assault and battery by means of a dangerous weapon) but was guilty of the lesser included offense (assault and battery). The giving of the instruction on the lesser included offense was proper.[2]

On this record, the judge was not required to give an instruction on self-defense. See *Commonwealth* v. *Maguire*, 375 Mass. 768, 772 (1978) ("such an instruction need not be given where there was insufficient evidence to support a theory of self-defense"). The defendant claimed that the scissors attack never happened but did admit that he became angry and shoved the complainant to the floor. A self-defense instruction would be contrary to his defense. Consequently, it was proper for the judge to refuse to instruct on the right of self-defense and to give the instruction concerning the lack of evidence as to right and excuse.

The judge did not instruct the jury that the supplemental instructions must be considered along with the main charge, and the defendant claims that the omission constituted prejudicial error. In *Commonwealth* v. *Hicks*, 22 Mass. App. Ct. 139, 144-145 (1986), decided some years before this case was tried, we stated that "[i]t would be helpful to us for trial judges to adopt the following practice when giving supplemental instructions to the jury. At the beginning and again at the end of the supplemental instructions, the judge should advise the jurors that all of the instructions are to be considered as a whole and that the supplemental instructions are to be considered along with the main charge, unless, of course,

---

[2]The defendant does not raise the propriety of the judge's giving sua sponte in his supplemental instructions an instruction on a lesser included offense.

When a question is posed by a deliberating jury, the better practice in the ordinary case is for the court to "confine its response to the approximate boundaries of the jury's inquiry." *United States* v. *Ladd*, 885 F.2d 954, 961 (1st Cir. 1989). Here, the judge expanded his response to include an instruction on the lesser included offense.

Although we are not required to address the issue, we note that it is only in rare instances that a judge sua sponte should introduce a lesser included offense in supplemental instructions. One problem is that it may undermine the theory of the defense. See *Commonwealth* v. *Thomas*, 21 Mass. App. Ct. 183, 187 (1985), and cases cited.

the supplemental instructions are given to correct an error in the main charge."

We never intended that the failure to give the *Hicks* instruction required a reversal — it was a recommendation which we hoped that trial judges would follow. A reading of the entire charge, including the supplemental instruction on assault and battery, demonstrates that the judge covered all the salient points required. Further, we note that the defendant did not object to the supplemental instruction on assault and battery, which "suggests that . . . trial counsel was satisfied with the instructions, at least to a point where counsel felt that the jury had received competent guidance . . . ." *Commonwealth* v. *Vidito*, 21 Mass. App. Ct. 332, 335 (1985).

3. *The judge's conduct of the trial.* The defendant claims that he did not receive a fair trial because of the judge's conduct toward defense counsel. In particular, he argues that the judge repeatedly rebuked defense counsel in front of the jury and thereby demonstrated that he was partial to the Commonwealth.

There is no question that the judge frequently displayed impatience with defense counsel. The root of the judge's impatience was not, as suggested by defense counsel, that the judge believed the defendant was guilty and was, therefore, wasting the court's time. Rather, the judge was concerned with the slow pace of the trial and thought that defense counsel was the cause.

Apparently in order to speed up the trial, the judge adopted a course of action concerning the defendant's witnesses which was unusual, to say the least.[3] At the beginning of the presentation of the defendant's evidence, the judge ordered defense counsel to appear at sidebar and to inform him of the "area" of each witness' anticipated testimony. The judge would then determine whether the testimony would be permitted. Defense counsel vigorously objected to the proce-

---

[3]We presume that the judge adopted the procedure in order to speed up the trial. The judge never stated for the record the basis for his action.

dure and argues, on appeal, that the procedure was demeaning to him.

The procedure should not have been adopted by the judge. Our reading of the record shows little or no basis for the judge's belief that defense counsel was delaying the progress of the trial. Defense counsel had an enormous task before him. A young woman had claimed that the defendant had broken into her home, raped and assaulted her, and that he had threatened to come after her if she did not drop the charges. The defendant denied the allegations. The matter was a classic case of a clash of credibility. Defense counsel was understandably cautious in his cross-examination of the Commonwealth's witnesses. At times, he was repetitious in his questions; at times, the judge properly ruled that some of defense counsel's questions were irrelevant. However, there is nothing in this record that would justify the extraordinary procedure adopted by the judge.

Although we strongly disapprove of the procedure employed by the judge,[4] we cannot say that it deprived the defendant of a fair trial. The conferences were at sidebar, and there is no indication in the record that the jury learned the subject of the conferences. Further, the defendant does not claim that he lost the testimony of any witness as a result of the judge's unusual procedure.

There was one incident between the judge and defense counsel, however, that took place in front of the jury. After the luncheon recess, during the presentation of the defendant's case, the judge informed the jury (and counsel) that he had to adjourn court that day at 3:45 P.M., instead of the customary time of 4:00 P.M. because he had to be somewhere else at 4:00 P.M. At 3:35 P.M., the defendant called a witness.

---

[4]Of course, a trial judge may, at sidebar, ask counsel for either party what areas counsel proposes to explore on redirect or recross-examination. Further, "[a] trial judge has substantial discretion whether to permit the presentation of rebuttal evidence." *Drake* v. *Goodman*, 386 Mass. 88, 92 (1982). In order to exercise that discretion, a judge has to inquire into the relevancy of the proposed rebuttal evidence.

It is the systematic screening of witnesses' direct testimony adopted by the judge in this case that is the subject of our condemnation.

The judge, employing the procedure which we have related above, ruled at sidebar that the defendant's witness could not testify because his testimony was not relevant.

Defense counsel requested a recess until the next morning. It was denied by the judge, who ordered him to call another witness. Defense counsel did, but that witness was not there. Defense counsel again requested a recess to the following morning. The judge responded, "Next witness, please, counsel." Defense counsel called another witness. She was not present. Defense counsel then told the court, "Your Honor, I have [already] called five witnesses [and they have testified]. It is twenty-five to four. The Court indicated that—" The judge interrupted and ordered defense counsel to put on another witness.

Defense counsel then called another witness, who did not answer. He informed the judge that the witness was under subpoena and worked in the Probate Court and that he would like the subpoena enforced. The judge intoned, "Counsel, next witness, please." Defense counsel again stated the witness was under subpoena and requested a sidebar conference. The judge refused.

Defense counsel then stated that he had "no further witnesses today." The judge then inquired, "There are no further witnesses and the defendant is resting?" Defense counsel responded, "The defendant is not resting. I am asking—" The judge cut off counsel and ordered him to "[p]ut on your next witness, counsel."

Defense counsel again requested that the court recess until the next morning. The judge denied the motion because he had informed counsel before trial that "all witnesses that were going to testify were to be here to testify."

Once again, counsel asked if he could have a sidebar conference. This time, the judge allowed the conference. At the conference, defense counsel stated that he had executed lawful subpoenas to the witnesses. The judge reminded defense counsel, "You were specifically told at the beginning of the trial that once the trial started we would have continual wit-

nesses for the full court day. . . ." The judge then recessed the proceedings until the following day.

In order to be fair to the judge and to defense counsel, we have recited the above incident in some detail. We agree with the judge that it is desirable that trials proceed expeditiously without any break in the testimony. However, in the course of any trial, especially a long one, problems arise through no fault of counsel. Sometimes, as here, witnesses do not respond to subpoenas. Sometimes, as here, witnesses do not appear although they may have promised counsel that they would. In those situations, counsel should be able to call upon the trial judge's patience and understanding. Recessing court ten minutes early will not, we think, affect seriously the course of justice in any particular case.

Here, the judge's rigid adherence to his rule that the testimony must be unbroken led him into an extended colloquy with defense counsel in the presence of the jury. During that colloquy, defense counsel remained respectful to the court. The judge's conduct, however, bordered on or even crossed over into disrespect to defense counsel.

While the judge's conduct was regrettable, we think that the number of not guilty verdicts on the more serious charges demonstrates that the jury were not influenced by the judge's conduct. We think, therefore, that the defendant was not deprived of a fair trial because of the judge's conduct.

We have examined the remaining issues raised by the defendant and find that they are without merit.

The assault and battery conviction is affirmed. The judgment on the indictment charging intimidation of a witness is reversed, and the verdict is set aside.

*So ordered.*