Commonwealth *v.* McCreary.

COMMONWEALTH *vs.* MICHAEL McCREARY.

No. 97-P-1867.

Hampden. September 2, 1998. - November 24, 1998.

Present: Kass, Flannery, & Rapoza, JJ.

*Witness,* Intimidation. *Intimidation of Witness. Words,* "Intimidation."

Review of cases prosecuted under G. L. c. 268, § 13B, on a charge of intimidation of a witness. [798-799]

Evidence at the trial of a complaint, alleging interfering by intimidation with a witness in violation of G. L. c. 268, § 13B, was sufficient to warrant the judge's denial of the defendant's motion for a required finding of not guilty. [799-801]

COMPLAINT received and sworn to in the Springfield Division of the District Court Department on May 26, 1995.

The case was tried before *M. John Schubert, Jr.,* J.

*Alan J. Black* for the defendant.

*Thomas H. Townsend,* Assistant District Attorney, for the Commonwealth.

KASS, J. Marcus McCreary, a fourteen year old boy, was to be tried in Juvenile Court in Springfield for trespass on May 25, 1995. His father, the defendant Michael McCreary, was convicted in District Court after a trial before a jury of six on a charge of interfering by intimidation with a witness in his son's case. See G. L. c. 268, § 13B.[1] The principal claim of error is that the trial judge wrongly denied a motion for a required finding of not guilty made at the close of all the evidence and again after the jury had returned their verdict. Mass.R.Crim.P. 25(b), 378 Mass. 896 (1978). To consider that issue, we state the facts

[1]The defendant was also tried on two counts of assault and battery on two police officers, a count of assault and battery on a public servant, and a count of disorderly conduct. The jury returned verdicts of not guilty on the complaints of assault and battery and failed to reach a verdict on a charge of disorderly conduct. The trial judge declared a mistrial as to that count.

that the jury might have found, taking the evidence in the light most favorable to the prosecution. See *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979).

On the second floor of the Old Springfield Courthouse, outside a Juvenile Court session, Ronald Sheehan, a Springfield police officer, was waiting to testify for the government against Marcus McCreary. Sheehan was in plain clothes. The defendant, a man of imposing physical presence, approached Sheehan, who himself stood six feet, one inch tall and weighed 215 pounds, and asked him whether he was the officer who had arrested his son. Sheehan allowed that he was, whereupon the defendant moved close to Sheehan and said, "You threatened to kick my son in his head didn't you. You want to kick somebody in the head, come look for me and try to kick me in my head. I'll kick you in your head." Another witness remembered the defendant as having said, "You kicked my son in the head; how would you like it if I kicked you in the head?" The defendant tensed up and, for his part, Sheehan grew "red and flush," began to feel panic, and claimed to have been "petrified." An assistant district attorney, Cheryl Rivera, who had observed the encounter, defused the situation by walking between the two men, taking Sheehan by the arm, and saying, "Can I speak to you for a moment officer?" She then led Sheehan downstairs to the first floor landing. The defendant was known to court officers as "extremely combative."[2]

So far as material, G. L. c. 268, § 13B, as appearing in St. 1970, c. 177, provides: "Whoever, directly or indirectly, willfully endeavors by means of . . . intimidation, force or threats of force, to influence, impede, obstruct, delay or otherwise interfere with any witness or juror in any stage of a trial or

[2]What happened next had both ugly and Keystone Cops aspects. Sheehan, not content to write off the defendant McCreary's remarks and body language as the fulminations of an irate father, went down the rest of the stairs to the first floor and rounded up a posse to place McCreary under arrest. McCreary resisted formidably. One of the officers gave McCreary a whiff of mace but that caused McCreary to bolt rather than submit. There was a furious struggle during which one officer, attempting to put McCreary in leg irons, managed in the confusion of limbs to manacle Officer Sheehan instead. Before the arrest of McCreary was over, he had been severely beaten and injured. That is the background of the assault and battery and disorderly conduct charges on which the jury did not convict the defendant.

other criminal proceeding . . . shall be punished . . . ."[3] The purpose of the statute, rather obviously, is to protect witnesses from being bullied or harried so that they do not become reluctant to testify or to give truthful evidence in investigatory or judicial proceedings. The larger purpose is to prevent interference with the administration of justice. *Commonwealth* v. *Rondeau*, 27 Mass. App. Ct. 55, 59 (1989). *Commonwealth* v. *Burt*, 40 Mass. App. Ct. 275, 277 (1996). *Commonwealth* v. *Belle Isle*, 44 Mass. App. Ct. 226, 228 (1998). See, construing a similar prior statute that appeared at 18 U.S.C. § 1510 (1976), *United States* v. *San Martin*, 515 F.2d 317, 320 (5th Cir. 1975); *United States* v. *Segal*, 649 F.2d 599, 603 (8th Cir. 1981).[4] Intimidation, according to the cases, is putting a person in fear for the purpose of influencing his or her conduct. *Planned Parenthood League, Inc.* v. *Blake*, 417 Mass. 467, 474, cert. denied, 513 U.S. 868 (1994). *Commonwealth* v. *Gordon*, 44 Mass. App. Ct. 233, 235 (1998). Making a case under the statute here requires proof beyond a reasonable doubt that (1) the target of the alleged intimidation was a witness in a stage of a criminal proceeding, (2) the defendant wilfully endeavored or tried to influence the target, (3) the defendant did so by means of intimidation, force, or threats of force, and (4) the defendant did so with the purpose of influencing the complainant as a witness. *Commonwealth* v. *Conley*, 34 Mass. App. Ct. 50, 53 (1993). Cf. *Commonwealth* v. *Gunter*, 427 Mass. 259, 268-269 (1998), which discusses the difficulties inherent in the common law phrases "general intent" and "specific intent." Matched against those criteria the judge's charge to the jury was correct.

Assuming intimidation by the defendant of Sheehan, for which there was ample evidence, the question remains whether the intimidation of Sheehan was by virtue of his role as a witness. Or, as the defense has urged, was the defendant McCreary simply venting his anger against Sheehan for something Mc-

---

[3]The statute was further amended by St. 1990, c. 369, and St. 1996, c. 393, §§ 2 to 4. The 1990 amendment dealt with the sanctions for violation of the statute; the 1996 amendments introduced matter not material to the case before us and, in any event, do not apply to it because the events occurred before the 1996 amendments.

[4]The Federal provisions analogous to those which appear in G. L. c. 268, § 13B, now appear in 18 U.S.C. § 1512(b) (1994). Section 13B of c. 268 also proscribes interference with witnesses through gift, offer, promise of anything of value, or through misrepresentation, i.e., bribery. A Federal analog appears as 12 U.S.C. § 1510.

Creary believed Sheehan had done in the past, namely, kicked McCreary's son in the head? In the case law to date applying G. L. c. 268, § 13B, the intent of the defendant to influence the testimony the target witness may give has been a fairly obvious inference. So, in *Commonwealth* v. *Conley*, 34 Mass App. Ct. at 52, the defendant told the victim on the telephone that if she testified against him, he would come after her.[5] In *Commonwealth* v. *Potter*, 39 Mass. App. Ct. 924, 925 (1995), the defendant called the prospective witness at her place of employment and asked whether she enjoyed being stalked. In *Commonwealth* v. *Burt*, 40 Mass. App. Ct. at 277, the defendant said to the witness, "How old is Michael [a son of the witness]? He's going to be 36? Do you think he'll make it to be 36?" The defendant then asked the witness whether she was afraid of him. The defendant went on, "And you have a daughter Elizabeth? . . . I know what kind of car she drives. Are you afraid of me now?" In *Commonwealth* v. *Belle Isle*, 44 Mass. App. Ct. at 230, the defendant tore the telephone from the wall to keep the potential witness from calling the police. Finally, in *Commonwealth* v. *Gordon*, 44 Mass. App. Ct. at 234, the defendant approached a juror at the end of a day's session of a trial involving the defendant's son. He said his son was "a good kid [who] didn't do anything [or] kill anyone." The defendant combined those remarks with standing only an inch or two from the juror while saying, "I've had my eye on you since day one; you're a juror on the case" and saying she was a "fine thing," so that the juror became "nervous" and "scared."[6] See *United States* v. *Victor*, 973 F.2d 975, 977-978 (1st Cir. 1992).

In all those cases, it required no stretch of imagination to infer that the defendant was attempting to influence the target in a witness or juror capacity. Here what McCreary said and did is less obviously related to Sheehan's functioning as a witness. The place, time, and circumstances of McCreary's approach, however, bring his conduct within the scope of the statute. Sheehan was a witness and McCreary knew that, McCreary's son having identified Sheehan. The place of approach was right outside the courtroom in which McCreary's son was to be tried,

[5] We reversed the conviction in that case because the jury instructions on § 13B were not correct.

[6] Indeed, in the *Gordon* case, the defendant admitted an intent to influence the target, but he denied intimidation.

and the approach was at a time just before the scheduled start of that trial. We think contact with the witness at the very brink, both in terms of time and place, of the witness function is a particularly material fact. The approach was close, intense, and physical. On those facts the jury, having been properly instructed, could infer that McCreary's purpose was by means of intimidation to endeavor wilfully to influence Sheehan's conduct as a witness. McCreary might think a threatened Sheehan at that time and place would testify less robustly against McCreary's son, or, conversely, Sheehan, under pressure, might be rattled in discharging his duties as a witness.

McCreary argues that the prosecutor misstated the evidence in his closing argument by stating that the trial of McCreary's son had not gone forward that day. The prosecutor's two isolated remarks to that general effect did not distort the evidence. Much of the trial concerned the fight between McCreary and various police and court officers. It was reasonable to infer that with Sheehan thus engaged, the trial of McCreary's son did not proceed on schedule. Perhaps more to the point, whether the trial proceeded on schedule is material but not critical to a violation of G. L. c. 265, § 13B; the statute requires only that the defendant shall have endeavored to impede or interfere with a witness.

*Judgment affirmed.*