COMMONWEALTH *vs.* CATHY C.,[1] a juvenile.

No. 03-P-619.

Hampden. December 7, 2004. - September 8, 2005.

Present: ARMSTRONG, C.J., BROWN, & BERRY, JJ.

*Juvenile Court,* Delinquent child. *Delinquent Child. Witness,* Intimidation. *Intimidation of Witness. Evidence,* Hearsay. *Practice, Criminal,* Hearsay, Voir dire.

At the trial of a juvenile based on threats that the juvenile, who had been attending a criminal trial, had made to the victim in that case in court after the verdict had been announced, but before any postconviction motions had been heard and before the conviction had been reduced to a final judgment, the evidence was sufficient to adjudicate the juvenile delinquent by reason of intimidation of a witness, G. L. c. 268, § 13B, where the juvenile's threats amounted to the requisite interference at a stage of a trial [472-475], and where her acts were sufficiently connected with the victim's witness function for the jury to infer that the intent element of the statute was satisfied [475-477].

Where, at the trial of the juvenile on a charge of delinquency, the juvenile did not object when disputed testimony was offered, she waived her claim that the testimony constituted inadmissible hearsay. [477-478]

COMPLAINT received and sworn to in the Hampden County Division of the Juvenile Court Department on December 3, 2001.

The case was tried before *Patricia M. Dunbar,* J.

*James D. Corbo* for the juvenile.

*Sidney E. Reavey,* Assistant District Attorney, for the Commonwealth.

BERRY, J. After a jury trial, the juvenile was adjudicated delinquent by reason of intimidation of a witness, G. L. c. 268, § 13B. On appeal, the juvenile asserts that the Commonwealth's evidence was legally insufficient to establish the elements of the

[1] A pseudonym.

crime of witness intimidation under G. L. c. 268, § 13B, and that the trial judge erred in admitting alleged hearsay evidence. We affirm.

*Facts.* The victim in the case testified as a witness for the prosecution at the trial of Fernando Perez. The juvenile apparently was a friend of Perez, and attended his trial. After the jury's verdict was announced, and as the victim was leaving the courtroom, the juvenile threatened the victim; specifically, the juvenile told the victim that she "was going to beat [the victim's] ass," or words to that effect. Other relevant facts are included in our analysis as necessary.

A. *Sufficiency of the evidence.* 1. *Timing.* General Laws c. 268, § 13B, as amended through St. 1996, c. 393, § 3, states, inter alia:

> "Whoever, directly or indirectly, willfully endeavors by means of . . . force or express or implied threats of force to influence, impede, obstruct, delay or otherwise interfere with any witness or juror in any stage of a trial, grand jury or criminal proceeding . . . and whoever injures any person or damages his property on account of . . . testimony given at a trial, grand jury or other criminal proceeding, shall be punished . . . ."

Section 13B, therefore, criminalizes two discrete forms of misconduct: (1) interference, actual *or* threatened, with a witness or juror during the pendency of a criminal proceeding, and (2) physical injury to person or property undertaken in retaliation for testimony given at a criminal proceeding, regardless of when such acts are carried out. In establishing this scheme, the Legislature apparently intended to proscribe a very broad range of misconduct when aimed at affecting the course of an ongoing proceeding. By comparison, the reach of the statute is more limited in the context of retaliatory acts carried out after a criminal proceeding has concluded, extending only to acts of physical violence.

This disparate treatment of posttrial and intratrial conduct is consistent with the underlying aim of § 13B; namely, to promote the integrity of criminal proceedings by creating an environment that encourages the truthful disclosure of all relevant evidence. As we stated in *Commonwealth* v. *McCreary*,

45 Mass. App. Ct. 797, 799 (1998), § 13B was enacted "to protect witnesses from being bullied or harried so that they do not become reluctant to testify or to give truthful evidence in investigatory or judicial proceedings." Consistent with this purpose, the need for protection is most acute while criminal proceedings are ongoing.

In the present case, the juvenile takes the view that her conduct, consisting as it did merely of threats, falls outside of the purview of § 13B because it occurred *after* the criminal proceeding at which the victim testified had ended.[2] As noted, under § 13B, nonphysical forms of intimidation are proscribed only when they occur during pending criminal matters. Without question, the verdict had been announced before the juvenile threatened the victim. However, the return of the verdict did not in fact, or in law, mark the end of the criminal proceedings.

In Massachusetts, a verdict is by no means a final disposition. Rather, the verdict must be reduced to a judgment which, in a criminal trial, is the sentence. As the Supreme Judicial Court stated in *Commonwealth* v. *LeRoy*, 376 Mass. 243, 245 n.1 (1978), quoting from *Commonwealth* v. *Lockwood*, 109 Mass. 323, 325 (1872), "[t]he ordinary legal meaning of 'conviction,' when used to designate *a particular stage* of a criminal prosecution triable by a jury, is the confession of the accused in open court, or the verdict returned against him by the jury, which ascertains and publishes the fact of his guilt . . ." (emphasis added).

Treating the return of a verdict as merely a stage in active proceedings, rather than the endpoint of the trial process, ac-

---

[2]The circumstances attending the juvenile's claim in this regard are actually somewhat more complicated, although these complications ultimately are irrelevant to this portion of our analysis. The victim was a witness against both Perez and another man, Tito Abrante, in connection with the same underlying incident. Abrante's separate trial had not taken place at the time the juvenile threatened the victim, and so the juvenile could make no claim that the timing of her threat, vis-à-vis Abrante's trial, put her conduct outside the ambit of G. L. c. 268, § 13B. However, the judge, in his charge, referenced intimidation with respect to "the criminal proceeding[s] against Fernando Perez and/or Tito Abrante." To the extent that it is possible that the jury's verdict was premised on interference with the victim in her role as a witness in the trial of Perez, we must determine whether § 13B would be applicable to such a charge.

cords with the reality of criminal trial procedures. In the first instance, motions for a required finding of not guilty under Mass.R.Crim.P. 25(b), 378 Mass. 896 (1979), frequently are renewed after the verdict is returned, and a verdict must be set aside if unsupported by legally sufficient evidence. Likewise, a judge, under Mass.R.Crim.P. 30(b), as appearing in 435 Mass. 1501 (2001), may allow a motion for new trial after the verdict has been announced. Further, the sentencing phase of a criminal trial is a crucial phase of the proceedings, to which due process protections attach. See *Commonwealth* v. *Lykus*, 406 Mass. 135, 145 (1989).

In the context of these postverdict proceedings, the very classes of persons protected by § 13B — i.e., jurors and witnesses — frequently have important duties to discharge. For example, jurors are often called upon to decide matters relating to sentence enhancement after the verdict on the underlying offense is announced. See, e.g., G. L. c. 90, § 24(1)(*a*)(1); G. L. c. 94C, § 32A(*d*); G. L. c. 279, § 25. At sentencing hearings, witnesses provide testimony on a broad range of matters, including probation reports, see Mass.R.Crim.P. 28(d), 378 Mass. 898 (1979), and victim impact statements, see G. L. c. 258B, § 3(*p*); G. L. c. 279, § 4B. During these final stages of a criminal trial, G. L. c. 268, § 13B, provides important continuing protection.

In short, a trial does not end when the verdict is announced. Frequently, complex matters remain to be resolved before a judgment may be imposed. Indeed, the postconviction process is often so lengthy that a trial judge is authorized by Mass. R.Crim.P. 28(b), 378 Mass. 898 (1979), to continue bail pending sentencing. All of this strongly militates against the defendant's claim that the criminal proceedings against Perez concluded when the jury returned their verdict.

General Laws c. 268, § 13B, makes it a crime "to influence, impede, obstruct, delay or otherwise interfere with any witness or juror in *any stage* of a trial" (emphasis added). On the basis of the foregoing, we conclude that the juvenile's threats here, made in court after the verdict was announced, but before any postconviction motions had been heard and before the conviction was reduced to a final judgment, amount to the requisite interference at a "stage of a trial." We reject the juvenile's

argument that, due to the timing of her actions, § 13B was inapplicable.

2. *Intent.* Quoting from our decision in *Commonwealth* v. *McCreary*, 45 Mass. App. Ct. at 799, the Supreme Judicial Court has stated that conviction of witness intimidation under G. L. c. 268, § 13B, requires proof, inter alia, that a defendant "wilfully endeavored or tried to influence" a witness. *Commonwealth* v. *Robinson*, 444 Mass. 102, 109 (2005). The juvenile argues that, to the extent that the victim here had already testified, there was no possible basis for the jury to infer that the juvenile had intended to influence the witness, construing "influence" as an effort to affect the substance of her testimony. The juvenile's approach reads § 13B far too narrowly.

Needless to say, to constitute a violation under G. L. c. 268, § 13B, there must be a close nexus between a defendant's conduct and the discharge of a victim's responsibilities as witness or juror. However, as noted already, G. L. c. 268, § 13B criminalizes the use of force or threats of force "to influence, *impede, obstruct, delay* or *otherwise interfere* with any witness or juror" (emphasis added). This broad proscription encompasses far more than simply influencing the content of testimony, but also reaches any form of conduct that directly touches on the performance of the witness's or juror's function, including acts that affect a witness's or juror's unimpeded access to the court itself — i.e., acts that "obstruct" or "delay" in the words of the statute.[3] Compare *Commonwealth* v. *Edwards*, 444 Mass. 526, 536-537 (2005) (adopting "forfeiture by

---

[3]There is, perhaps, some confusion in the case law on this point. In *Commonwealth* v. *Conley*, 34 Mass. App. Ct. 50, 53 (1993), a case in which the defendant unquestionably endeavored to influence the content of the victim's testimony, we stated:

> "*Under the theory on which the Commonwealth presented its case*, it was required to prove beyond a reasonable doubt that (1) the complainant was a witness in a stage of a criminal proceeding, (2) the defendant . . . tried to influence the complainant, (3) he did so by means of intimidation, force, or threats of force, and (4) he did so with the specific intent of influencing the complainant as a witness" (emphasis added).

This formulation has since been cited numerous times to explain the elements of § 13B. While it accurately stated the Commonwealth's burden in *Conley*,

wrongdoing" doctrine, which applies in cases where defendant violates G. L. c. 268, § 13B, in order to procure witness's unavailability). By threatening the victim as she attempted to leave the courtroom, the juvenile sufficiently interfered with the victim's duties as a witness to support a conviction under § 13B.

In many respects, this case closely resembles the situation in *Commonwealth* v. *McCreary*, 45 Mass. App. Ct. at 798-801. In *McCreary*, the defendant approached a police officer as he stood outside a courtroom, and threatened retaliation for injuries inflicted by the officer on the defendant's son during the son's arrest. *Id.* at 798. At the time, the officer was waiting to testify for the Commonwealth at the son's trial. *Ibid.* The defendant was arrested and subsequently convicted of intimidation of a witness, G. L. c. 268, § 13B. *Id.* at 797-798. There, as here, the defendant argued that his actions were manifestly not aimed at influencing the content of the victim's testimony. *Id.* at 799-800.

In rejecting the defendant's claim in *McCreary*, we relied heavily on the fact that the contact with the victim had occurred "at the very brink, both in terms of time and place, of the witness function." *Id.* at 801. The same considerations are highly relevant here. The juvenile's acts, occurring as they did in the very courtroom in which the victim testified and on the very day the verdict was announced, were sufficiently connected with the witness function to constitute a violation of § 13B. See *Commonwealth* v. *Robinson*, 444 Mass. at 111 (intent element of § 13B may be inferred from broad range of conduct).

The outcome in *McCreary* was also premised on the view

the key words in that decision were "[u]nder the theory on which the Commonwealth presented its case." *Ibid.* That is to say, the formulation in *Conley* is correct where the specific misconduct alleged is influencing testimony. As noted, however, G. L. c. 268, § 13B, criminalizes not only attempts to "influence," but also any effort to "impede, obstruct, delay or otherwise interfere with any witness or juror." Where obstruction, delay or interference is alleged, the formulation of the elements must be altered to suit the particular theory of the case. All of these forms of misconduct are equally proscribed by the statute. Along these lines, we note the judge here quite properly charged the jury that they had to find, inter alia, that the juvenile "acted with a specific intent to influence, impede, [ob]struct, delay or otherwise interfere" with the victim.

that § 13B has a broader aim than merely ensuring the safety of individual jurors or witnesses. *Commonwealth* v. *McCreary*, 45 Mass. App. Ct. at 799. "The larger purpose [of § 13B] is to prevent interference with the administration of justice." *Ibid.* See *Commonwealth* v. *Burt*, 40 Mass. App. Ct. 275, 277 (1996) (by protecting "participants in judicial proceedings[,] . . . [§ 13B] protect[s] . . . the public interest in the due administration of justice"). To permit acts of intimidation within courtrooms against jurors or witnesses, where such acts are directly related to a victim's role as juror or witness, would seriously undermine public confidence in the courts, and discourage would-be jurors or witnesses from participating in future proceedings. In view of all these considerations, we conclude that the evidence was legally sufficient for the jury to infer that the intent element of § 13B was satisfied.[4]

B. *Motion in limine.* During pretrial proceedings, the juvenile filed a motion in limine to exclude any testimony by the victim concerning the defendant's threat on the grounds that the statement constituted hearsay, not within any exception to the traditional hearsay proscription, and that, in any event, the victim's testimony was unreliable because the juvenile had "mouthed" her words, rather than speaking them aloud. The judge denied the motion, and no objection was lodged when the disputed testimony was offered at trial. In these circumstances, the juvenile's claim is waived. See *Commonwealth* v. *Whelton*, 428 Mass. 24, 25-26 (1998). Although we have the discretion to consider waived claims where a substantial risk of a miscarriage of justice is posed, we do not elect to exercise that discretion here. See *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967).

---

[4]Although it is not a basis for our decision here, we note that even if proof of an intent to influence the substance of the victim's testimony were required here, to the extent that the trial proceedings had not concluded, it was still possible that the victim might have been called upon to provide further testimony that could have been affected by the juvenile's threat. For example, a motion for new trial could have been allowed by the trial judge, creating the potential for the victim to appear again as a witness against Perez. It is also possible that the victim could have been called upon to testify at the sentencing hearing. As we observed in *Commonwealth* v. *Burt*, 40 Mass. App. Ct. at 277, the statute applies "so long as there is a *possibility* that the target of the defendant's activities will be called upon to testify" (citation omitted).

We note, in passing, that the question of the reliability of the victim's testimony was a question of weight, to be assessed by the factfinder, not a question of admissibility as the defendant suggests. See *Commonwealth* v. *James.* 424 Mass. 770, 785 (1997). As to the alleged hearsay character of the statement, we observe only that it was not offered to prove the truth of the matter asserted therein. Rather, the only relevant issue was whether, in fact, the juvenile had made such a statement. See *Commonwealth* v. *Kenney*, 437 Mass. 141, 152 (2002). In any event, the claim is waived.[5]

*Adjudication of delinquency affirmed.*

---

[5]For the first time on appeal, the juvenile argues that the trial judge should have provided, sua sponte, an instruction on the concept of specific unanimity, compelling the jury to agree on whether the juvenile's conduct was aimed at interfering with the victim's duties as a witness in connection with the Perez or the Abrante trial. This issue is likewise waived. See *Commonwealth* v. *Zimmerman*, 441 Mass. 146, 150-151 (2004). See also Mass.R.Crim.P. 24(b), 378 Mass. 895 (1979) ("No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict . . ."). Even were we to consider the question, it almost certainly would not be resolved in the juvenile's favor. The Commonwealth introduced evidence of a single criminal act; in such circumstances, a specific unanimity charge is not appropriate. While a jury must agree on the criminal acts that support the individual elements of a crime, unanimity is not required "on every evidentiary factor supporting an element of a crime" (citation omitted). *Commonwealth* v. *Perez*, 444 Mass. 143, 156 (2005).