## COMMONWEALTH *vs.* ANGEL M. ROSARIO.

No. 11-P-2005.

Hampden. October 3, 2012. - May 22, 2013.

Present: GRAHAM, VUONO, & HANLON, JJ.

*Intimidation of Witness. Witness,* Intimidation. *Intent. Evidence,* Intent.

At the trial of an indictment charging the defendant with intimidation of a witness, in violation of G. L. c. 268, § 13B, the evidence, viewed in the light most favorable to the Commonwealth, was sufficient to permit a jury to conclude, beyond a reasonable doubt, that the defendant's conduct (i.e., pointing his fingers to his head as if he were shooting a gun while stating that the victim-witness "would die") was indicative of an intent either to interfere with the witness's testimony or to dissuade him from testifying altogether. [642-645] HANLON, J., dissenting.

INDICTMENT found and returned in the Superior Court Department on October 19, 2009.

The case was tried before *Daniel A. Ford,* J.

*Michael Tumposky* for the defendant.

*Dianne M. Dillon,* Assistant District Attorney, for the Commonwealth.

VUONO, J. On appeal from a conviction of intimidation of a witness, the defendant contends that the judge erred in denying his motion for a required finding of not guilty. In the circumstances of this case, we conclude that the defendant's act of pointing his fingers to his head as if he were shooting a gun while stating that the victim-witness "would die" constitutes intimidation of a witness. Consequently, we affirm the defendant's conviction.

*Background.* The defendant, Angel M. Rosario, was initially charged with armed assault with intent to murder and assault and battery by means of a dangerous weapon in connection

with the stabbing of Joseph Alvarado on July 11, 2008.[1] There is no dispute that the defendant and Alvarado had an acrimonious relationship. The tension between them stemmed from Alvarado's suspicion that the defendant had become romantically involved with Angela Perez, the mother of Alvarado's children, while Alvarado was in prison. Perez was close to the defendant and turned to him for protection from Alvarado, who abused her. In fact, the stabbing incident arose, in part, as a result of Alvarado's mistreatment of Perez. About four months after the stabbing, the defendant confronted Alvarado in the hallway of the court house, known as the Hall of Justice, in Springfield. This encounter led to the additional charges of intimidation of a witness and threat to commit murder.

Following a jury trial in Superior Court on all the charges, the defendant, who claimed that he had stabbed Alvarado in self-defense and in defense of another, was acquitted of all the charges except intimidation of a witness. On appeal, the defendant concedes that the evidence was sufficient for the jury to find that he threatened Alvarado and that Alvarado was to be a witness against him in a criminal proceeding. He claims, however, that his motion for a required finding of not guilty should have been allowed because the Commonwealth failed to prove that he possessed the requisite intent "to impede, obstruct, delay, harm, punish, or otherwise interfere" with a criminal proceeding.[2]

*Facts.* We summarize the evidence presented at trial on the charge of intimidation of a witness in the light most favorable to the Commonwealth. See *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979). On July 15, 2008, the defendant was arraigned in District Court on the charges which arose from the stabbing of Alvarado and was ordered to stay away from

---

[1] Alvarado was seriously injured, and his wounds required surgery.

[2] See G. L. c. 268, § 13B, as amended through St. 2006, c. 48, § 3, providing in pertinent part as follows: "(1) Whoever, directly or indirectly, willfully (*a*) threatens, . . . (i) a witness or potential witness at any stage of a . . . criminal proceeding of any type . . . with the intent to impede, obstruct, delay, harm, punish or otherwise interfere thereby, with a . . . trial or other criminal proceeding of any type shall be punished . . . ." The statute was amended again in 2010. See St. 2010, c. 92, § 11; St. 2010, c. 256, § 120. The 2010 amendments do not apply to this case and would not affect the outcome if they did.

Alvarado as a condition of his release. Thereafter, the defendant was placed on pretrial probation and was supervised by a probation officer of the Hampden County Superior Court probation department. The order to stay away from Alvarado remained in place. In addition, the defendant had an afternoon curfew of 3:00 P.M.

On November 21, 2008, the defendant reported to his probation officer at 1:00 P.M. at the Superior Court probation office, which is also located in the Hall of Justice. The meeting lasted approximately ten minutes. Both Perez and Alvarado were also at the Hall of Justice that day. Alvarado, who was in custody, had been arrested for shooting at Perez's car and was scheduled to appear in the District Court. Although the defendant had no other business at the Hall of Justice on that afternoon, he remained there until after 2:00 P.M. and was standing in the hallway when, at about 2:15 P.M., Alvarado was escorted by a court officer from the lockup facility to a District Court court room. The defendant gestured at Alvarado by putting two fingers to his temple and a thumb facing up, mimicking the shooting of a gun, and stated in Spanish, "you are going to die." Alvarado became nervous and reported the incident to both the court officer and the judge. At the conclusion of Alvarado's hearing in court, he was escorted back to the lockup. The defendant, who had remained in the hallway, approached Alvarado and the court officer from behind and repeated his threat to Alvarado. The court officer described an "outburst" between the defendant and Alvarado, but did not know what was said because he did not understand Spanish. However, he observed the defendant place two fingers to his temple while he was talking to Alvarado. According to the court officer, Alvarado was "very upset."

*Discussion.* We review the sufficiency of the evidence under the established standard "whether the evidence received, viewed in a light most favorable to the Commonwealth, is sufficient so that the jury 'might properly draw inferences, not too remote in the ordinary course of events, or forbidden by any rule of law, and conclude upon all the established circumstances and warranted inferences that the guilt of the defendant was proved beyond a reasonable doubt.' " *Commonwealth* v. *Pope*, 406 Mass.

581, 584 (1990), quoting from *Commonwealth* v. *Clary*, 388 Mass. 583, 588 (1983).

As we have noted, the defendant challenges the Commonwealth's evidence on the element of intent, about which there was no direct evidence. However, "[m]atters of intent are rarely proved by direct evidence and are most often proved circumstantially." *Commonwealth* v. *Riley*, 73 Mass. App. Ct. 721, 730 (2009). Moreover, as the cases have frequently stated, "[c]ircumstantial evidence is competent to establish guilt beyond a reasonable doubt." *Commonwealth* v. *Merola*, 405 Mass. 529, 533 (1989). "An inference drawn from circumstantial evidence 'need only be reasonable and possible; it need not be necessary or inescapable.' " *Ibid.*, quoting from *Commonwealth* v. *Beckett*, 373 Mass. 329, 341 (1977).

The defendant argues that, even if he threatened Alvarado, he did so as a result of his longstanding animosity toward Alvarado and not with the purpose of influencing Alvarado's testimony. This argument ignores the principle that the evidence must be viewed in the light most favorable to the Commonwealth. Furthermore, the evidence of hostility between the defendant and Alvarado does not preclude an inference of an intent to intimidate. The defendant may have acted out of hostility and, at the same time, intended to intimidate Alvarado as a witness. See *Commonwealth* v. *Lauzier*, 53 Mass. App. Ct. 626, 630 (2002) (at a trial on an indictment charging breaking and entering a dwelling in the nighttime with intent to commit a felony, there was sufficient evidence upon which the trier of fact could rationally and justifiably find that the defendant's intent at the time he broke into his parents' home was not only to commit suicide, but also to commit felonious assaults upon the police who responded to the break-in).

Additionally, the evidence and reasonable inferences drawn therefrom were sufficient to establish that the defendant acted both with the requisite intent for witness intimidation and in retaliation against Alvarado as a result of the shooting incident involving Perez. We see no reason why the jury were compelled to accept, as the defendant suggests, that he had only the intent to retaliate. Here, the jury rationally could have concluded that the defendant acted with more than one intention. Thus, the fact

that the defendant was upset over the shooting incident and wanted revenge, as the dissent maintains, is not determinative.[3]

The defendant next argues that the timing of the incident made it less likely that he possessed the requisite intent to interfere with Alvarado's future testimony. While the defendant is correct that time, place, and circumstances may be considered in determining whether sufficient evidence has been introduced to prove that threatening conduct falls within the parameters of the statute, see *Commonwealth* v. *McCreary*, 45 Mass. App. Ct. 797, 800 (1998), we are not persuaded by the defendant's argument. The fact that the intimidation occurred before the indictments were returned is not determinative of the issue.[4] "Intimidating statements made well in advance of trial and outside of the courthouse may be punished if their content warrants it." *Commonwealth* v. *Drumgoole*, 49 Mass. App. Ct. 87, 91 (2000). Nor does it matter that Alvarado was in court in connection with a separate proceeding. "It is not necessary that a defendant's statement or conduct refer directly to a [particular] pending court case in order to constitute intimidation." *Id.* at 91.

Moreover, the jury could have reasonably inferred that the encounter was not spontaneous, but instead was planned. The defendant, who had been ordered to stay away from Alvarado, not only remained in the court house long after his appointment with his probation officer, but he lingered to the point of risking a violation of his curfew. These circumstances do not suggest, as the defendant contends, that this was a chance encounter. An inference that the jury were entitled to draw, and seemed to have drawn, is that the defendant knew Alvarado would appear in court and that he waited for the opportunity to confront and intimidate him.

---

[3]This is not the rare case where "the evidence tends equally to sustain either of two inconsistent propositions, [and] neither of them can be said to have been established by legitimate proof." *Commonwealth* v. *Eramo*, 377 Mass. 912, 913 (1979), quoting from *Commonwealth* v. *Croft*, 345 Mass. 143, 145 (1962). Rather, in this case, the evidence supports more than one reasonable inference and, therefore, it was for the jury to determine where the truth lies. See *Commonwealth* v. *Lao*, 443 Mass. 770, 779 (2005).

[4]The record does not disclose an explanation for the delay between the defendant's arraignment in District Court and the return of the indictments by the grand jury.

In summary, the evidence established that Alvarado was the victim in a serious case pending against the defendant and, as such, would be expected to testify at trial. When the opportunity presented itself, the defendant threatened Alvarado twice. Our cases do not require that a defendant charged with intimidation of a witness must express his purpose before a jury can draw an inference of intent to intimidate. See *Commonwealth* v. *Mc-Creary, supra* at 800 (defendant's behavior can constitute intimidation even though his purpose has not been explicitly stated). To be sure, as the dissent points out, there are cases in which the evidence on the element of intent is stronger. Nonetheless, it suffices that the conduct at issue reasonably could be viewed as an attempt to interfere with a witness's testimony. See *Commonwealth* v. *Robinson,* 444 Mass. 102, 109-110 (2005). Because the evidence was sufficient for the jury to find beyond a reasonable doubt that the conduct in question was indicative of an intent either to interfere with Alvarado's testimony or to dissuade him from testifying altogether, the judge properly denied the defendant's motion for a required finding of not guilty.

*Judgment affirmed.*

HANLON, J. (dissenting). I respectfully dissent. In my view, the Commonwealth has failed to prove beyond a reasonable doubt that the defendant's admitted intimidation of Joseph Alvarado was "by virtue of his role as a witness." *Commonwealth* v. *McCreary,* 45 Mass. App. Ct. 797, 799 (1998) (*McCreary*). The facts of this case are important to understanding the issue. In her testimony, Angela Perez described a long history involving the defendant, Alvarado, and herself. She said that Alvarado had violently and repeatedly abused her over a period of years and that she had tried unsuccessfully to end the relationship, several times seeking restraining orders. During that time, she was acquainted with the defendant, who lived nearby and who was a fire fighter and a single parent. At that time, she "really didn't trust anybody but [the defendant], and he was a very loyal friend" to her. When Alvarado was incarcerated, between 2005

and 2008, he became suspicious that Perez and the defendant were involved romantically, and he sent Perez letters threatening both of them.

After Alvarado's release in July, 2008, there was an incident involving Alvarado and Perez, followed the next morning by a confrontation between the defendant and Alvarado; for his part in the confrontation, the defendant was charged with assault and battery by means of a dangerous weapon and armed assault with intent to murder. He was arraigned on those charges in District Court on July 15, 2008, and then released and placed on pretrial probation with an order to stay away from Alvarado.

More than three months later, on November 21, 2008, Alvarado was charged with shooting a gun at Perez as she was driving away from him; he appeared for arraignment a short time later in the Springfield Division of the District Court Department. It was at that time that the defendant, originally in court to report to his probation officer, threatened Alvarado (in Spanish), in front of witnesses, telling Alvarado that he was going to kill him and making a gesture as if he were pointing a gun to his head. Almost a year later, on October 19, 2009, the defendant was indicted on all of the charges: those involving the July, 2008, incident as well as the November 21, 2008, intimidation and threat charges. In March, 2011, he was tried and convicted only of the intimidation of a witness charge.

Against that background, this court's comment in *McCreary* case is instructive. "In the case law to date applying G. L. c. 268, § 13B, the intent of the defendant to influence the testimony the target witness may give has been a fairly obvious inference." *McCreary, supra* at 800. After *McCready*, the same observation remains true. So, for example, in *Commonwealth* v. *Perez*, 460 Mass. 683, 702-703 (2011), "[w]hile in custody awaiting trial, the defendant wrote a letter to [a key witness] in which he sought to convince her either to recant her grand jury testimony or not to testify at trial." In *Commonwealth* v. *Valentin V.*, ante 202, 206 (2013), "[t]he alleged threats were communicated in specific reference to the claim that [the victim] was a 'snitch' regarding the recent theft of the Xbox." In *Commonwealth* v. *Bell, ante* 61, 64 (2013), "[t]he defendant made his threat immediately after he had been found guilty of open

and gross lewdness arising from his exposing himself to the victim, and before sentencing, when she would have the opportunity to make her victim impact statement to the trial judge."

On the other hand, this court recognized in *McCreary* that there is a meaningful distinction between a threat of vengeance for something done in the past and a threat intended to influence a witness. In *McCreary*, a father confronted a police officer who had arrested his fourteen year old son and, allegedly, had kicked the boy in the head. We observed, "[a]ssuming intimidation by the defendant of [the officer], for which there was ample evidence, the question remain[ed] whether the intimidation of [the officer] was by virtue of his role as a witness. Or, as the defense has urged, was . . . McCreary simply venting his anger against [the officer] for something McCreary believed [the officer] had done in the past, namely, kicked McCreary's son in the head?" *Id.* at 799-800. In that case, we resolved the question in the Commonwealth's favor because "[t]he place, time, and circumstances of McCreary's approach . . . [brought] his conduct within the scope of the statute. . . . The place of approach was right outside the courtroom in which McCreary's son was to be tried, and the approach was at a time just before the scheduled start of that trial. *We think contact with the witness at the very brink, both in terms of time and place, of the witness function is a particularly material fact*" (emphasis supplied). *Id.* at 800-801.

Other cases that have addressed the issue have stressed that the proximity, both temporal and physical, of the intimidating behavior to the legal proceeding the defendant seeks to influence, that is, to the witness function, is an important factor in discerning the defendant's intent. See, e.g., *Commonwealth* v. *Robinson*, 444 Mass. 102, 109-110 (2005), quoting from *McCreary* ("[T]he timing of the defendant's actions makes it more, rather than less, likely that he was trying to intimidate the witness. . . . In the instant case, the defendant acted aggressively and glared at the victim at the show cause hearing. He pushed a table away, and the victim described the defendant as asking in a 'bloodcurdling way, "Are you sure you want to go on with this?" ' A jury could find that asking this question of the victim just before he was to testify reasonably could be viewed

as an attempt to influence the victim to alter his testimony, or even drop the charges. The Appeals Court has noted that 'contact with the witness at the very brink, both in terms of time· and place, of the witness function is a particularly material fact.' [*McCreary, supra*] at 801"). See *Commonwealth* v. *Cathy C.,* 64 Mass. App. Ct. 471, 475 (2005) ("Needless to say, to constitute a violation under G. L. c. 268, § 13B, there must be a close nexus between a defendant's conduct and the discharge of a victim's responsibilities as witness or juror"); *Commonwealth* v. *Pagels,* 69 Mass. App. Ct. 607, 614 (2007) ("The time and the circumstances of the contact bolster this conclusion"). See also *Commonwealth* v. *Robinson,* 444 Mass. at 111, citing *Commonwealth* v. *McCreary,* 45 Mass. App. Ct. at 800.

I agree with the majority that the defendant acted with the intent to intimidate; he does not dispute that. The issue is whether, in threatening Alvarado, at the time of Alvarado's arraignment, the defendant intended to influence Alvarado's testimony in a case that had been pending for months and would not be tried in the foreseeable future, or whether, in the far more likely scenario, the defendant intended revenge because Alvarado had just shot at Perez or for some other reason. All of the circumstances of time and place here support the second proposition; the proximity was to Alvarado's arraignment for shooting at Perez — not to any testimony he might someday give against the defendant. Even viewing the evidence in the light most favorable to the Commonwealth, I do not see how a rational jury could be persuaded beyond a reasonable doubt that the defendant, having ignored Alvarado for three months, while his own case was pending and both were free in the community, then chose to threaten Alvarado in a court house in front of government witnesses because he might be a witness against him sometime in the future, and not because Alvarado was being arraigned for shooting at Perez or for some other reason. Such a conclusion makes meaningless the requirement that the Commonwealth prove that the defendant specifically intended to interfere with a criminal proceeding. In my view, the motion for a required finding of not guilty should have been allowed.