COMMONWEALTH *vs.* THOMAS RONDEAU.

No. 88-P-420.

Hampden.   October 11, 1988. — February 24, 1989.

Present: GREANEY, C.J., ARMSTRONG, & SMITH, JJ.

*Intimidation of Witness. Conspiracy. Attempt. Statute,* Construction. *Practice, Criminal,* Indictment. *Words,* "Endeavor."

Proof of the offense set forth in G. L. c. 268, § 13B, i.e., the wilful "endeavor[] . . . to influence . . . or otherwise interfere" with any witness or juror in any stage of criminal proceedings, does not require proof that an actual witness or juror in the underlying criminal proceedings was in fact approached. [59-60]

The word "endeavor" as appearing in G. L. c. 268, § 13B, connotes a somewhat lower threshold of purposeful activity than would constitute an "attempt" to commit the activity proscribed by that statute. [60-61]

A defendant charged with an "endeavor" to "influence . . . or otherwise interface with any witness . . . in any stage of a trial or other criminal proceeding" as proscribed by G. L. c. 268, § 13B, was not entitled to dismissal of the indictment on the ground that the witness named in the indictment was not the person actually approached. [61-62]

The court declined to address a criminal defendant's assertion that a statute was unconstitutionally vague where the issue was not raised before the judge below. [62-63]

INDICTMENTS found and returned in the Superior Court Department on February 19, 1987.

Motions to dismiss were heard by *Lawrence B. Urbano,* J.

*Elizabeth R. Dunphy,* Assistant District Attorney, for the Commonwealth.

*Wendy Sibbison* for the defendant.

SMITH, J.   In February, 1987, a Hampden County grand jury indicted the defendant, Thomas Rondeau, alleging that he had violated G. L. c. 268, § 13B.[1] He was also charged with

[1] General Laws c. 268, § 13B, as amended by St. 1970, c. 177, reads in part as follows: "Whoever, directly or indirectly, willfully endeavors by

conspiracy in regard to the same statute. The defendant filed a motion to dismiss the indictments. While acknowledging that under the relevant parts of G. L. c. 268, § 13B, a crime is committed whenever a person wilfully endeavors to influence, impede, obstruct, delay or otherwise interfere with a witness (or juror) in any stage of a trial or other criminal proceeding by means of a gift, offer, or promise of anything of value, or by misrepresentation, intimidation, or force, the defendant contended that the grand jury minutes showed that the person who was allegedly paid money for agreeing not to testify at a criminal trial was not a "witness . . . in any stage of a trial or other criminal proceeding . . . ." He argued that, because an essential element of the crime was missing, the indictments must be dismissed because the Commonwealth failed to meet the minimum standard for the sufficiency of the evidence presented to the grand jury, established in *Commonwealth* v. *McCarthy*, 385 Mass. 160, 163 (1982). The Commonwealth claimed that under G. L. c. 268, § 13B, evidence of a wilful *endeavor, by itself*, to influence or otherwise interfere with a witness by certain means, constitutes the substantive offense. It argued that the fact that the wrong person, not the actual witness, was approached is of no consequence, and, therefore, it presented sufficient evidence to support the indictments.

The evidence before the motion judge consisted of the grand jury minutes containing the testimony of the witnesses. We summarize that testimony. Isabel Poe (a fictitious name) told the grand jury that sometime between 9:00 P.M. and 10:00 P.M. on October 10, 1986, she was beaten and robbed by one Ralph Santaniello (Ralph). He was apprehended soon afterward by the police. A criminal complaint charging him with unarmed robbery of Isabel Poe was issued by the District Court of Springfield on October 14, 1986. He was arraigned on that complaint the same day. A bindover hearing was scheduled for January 15, 1987.

means of a gift, offer or promise of anything of value, or by misrepresentation, intimidation, force or threats of force, to influence, impede, obstruct, delay or otherwise interfere with any witness or juror in any stage of a trial or other criminal proceeding . . . shall be punished . . . ."

Prior to the bindover hearing, an incident occurred that re-
sulted in the indictments under review by the motion judge.
The defendant, a lieutenant in the Springfield police depart-
ment, testified before the grand jury about that event. He stated
that one night in October he was working the 4:00 P.M. to
midnight shift. While driving a cruiser in the south end section
of the city, he was "pulled over" by Amedeo Santaniello
(Amedeo), the father of Ralph. The defendant had known
Amedeo for five years. Amedeo asked the defendant if he had
heard about the complaint against his son. He responded that
he had heard bits and pieces. Indicating that he knew this was
not the first time that something like this happened, the defend-
ant advised Amedeo that his son should seek psychiatric help.
Amedeo then told the defendant that he wanted to talk to the
victim "to find out what happened because he had heard differ-
ent stories." The defendant replied that he did not know the
victim but from police station gossip he knew where she might
be found.

The defendant decided to try to find the victim. He drove
in the cruiser to an establishment called the Whistle Stop. He
had heard that the victim was a "hooker" and "a Spanish girl
that worked the Whistle Stop." Upon arrival at the establish-
ment, the defendant asked a woman who was just leaving if
she knew of "a Spanish girl that had gotten beaten up." He
was directed to a young woman sitting at a table. He went
over to the woman and asked her if she was the one who had
been assaulted. She indicated that she was. The defendant sat
down and told the woman that the father was concerned and
that "the kid needs psychiatric help and that the father would
like to talk to her." He stated that he informed the woman that
she was not required to talk to anybody until she came to court.
The woman, according to the defendant, agreed to talk to the
father.

The defendant testified that, after his conversation with the
woman, he returned to the south end of the city where he had
left Amedeo. He then drove Amedeo to the Whistle Stop and
went inside with him. Both approached the woman. The de-
fendant told the grand jury that he said to her, "[H]ere is the

father and you can tell him what really happened." He offered to stay with her while she talked to Amedeo but she told him to leave. The defendant left Amedeo with the woman.

The woman in the Whistle Stop who was approached by the defendant was not Isabel Poe but rather her niece, Marta, who shared the same last name as Isabel. At the time she encountered the defendant and Amedeo, Marta did not know that Isabel had been assaulted and robbed some time earlier and was unaware of a complaint for unarmed robbery brought in the District Court against Amedeo's son, Ralph. By coincidence, however, she had been beaten up by a man a couple of nights before she spoke to the defendant and Amedeo.

Marta told the grand jury that one evening while in the Whistle Stop she was approached by a police officer whom she identified as the defendant. She recognized him as a "vice cop" and indicated that he was working that night.[2] He asked her if she was "[Poe]" (addressing her only by her last name). She told the police officer that she was. "He then told me that the parents of the kid who beat me up wanted to fix things and I would not have to go to court." She further testified that she understood the police officer's statement to mean that "they were going to pay me off." He told her to stay there and he would get the parents. He left and returned in about half an hour with some men. The police officer asked Marta if she wanted him to stay, and she told him "no." He then left. One man, whom she later identified as Amedeo, stayed. He told Marta that "he was sorry for what happened, and he wanted to know how much money [she] wanted to drop the charges." Marta testified, "I told him I just wanted him to pay my hospital bills which were $200." The man gave her $300 and told her to buy something for herself. Marta later told Isabel that "this guy paid me off for getting beaten up . . . ." Isabel told Marta that the money was intended for her.[3]

---

[2] The defendant told the grand jury that, when he walked into the Whistle Stop, he was partially in uniform, including uniform pants, holster, and "walkie-talkie."

[3] Isabel told the grand jury that, after she had appeared in the District Court for a conference on the complaint, she was approached by two men

After listening to the arguments of counsel, the motion judge ruled in favor of the defendant. He stated, "A plain reading of the statute shows that one must 'endeavor' to intimidate a *witness* [emphasis in original]. There is no contention that Marta [Poe] is a witness. I agree with the defendant that an essential element of the crime . . . is missing." He, therefore, allowed the defendant's motion to dismiss the indictments. The Commonwealth has appealed from the judge's decision, claiming that he misinterpreted G. L. c. 268, § 13B.

Given that the statute forbids the wilful *endeavor* to influence or otherwise interfere with a witness by certain means, the question whether there can be an endeavor for purposes of the statute when a witness is not, in fact, approached, appears to be a matter of first impression in the Commonwealth. We are assisted in our analysis, however, by several Federal decisions that have interpreted legislative enactments somewhat similar to G. L. c. 268, § 13B.

"[A] statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." *Commonwealth* v. *Galvin*, 388 Mass. 326, 328 (1983), quoting from *Board of Educ.* v. *Assessor of Worcester*, 368 Mass. 511, 513 (1975).

It is apparent from a reading of G. L. c. 268, § 13B, that the intent of the Legislature was to protect witnesses (and jurors) in certain proceedings and to prevent interference with the administration of justice. Keeping that purpose in mind, a reading of the statute demonstrates that the operative word is "endeavors." That word, as used in the context of a similar Federal legislative enactment, has been defined as "any effort or essay to accomplish the evil purpose that the [statute] was enacted to prevent." *United States* v. *Russell*, 255 U.S. 138,

who offered her $1,000 to drop the charges against Ralph. She refused. The individuals who approached Isabel were not Amedeo or the defendant.

143 (1921). *Osborn* v. *United States*, 385 U.S. 323, 333 (1966).[4] By using the word "endeavors," it is apparent that the Legislature intended to punish any wilful conduct that amounted to an "effort or essay" to "influence, impede, obstruct, delay or otherwise interfere with any witness . . . in any stage of a trial or other criminal proceeding." It is not an essential element of the crime that an actual witness or juror (the object of the "effort or essay") be approached. *Ibid.*[5] Further, given that persons receiving intimidations and threats are unlikely to report those activities, it serves the public interest to allow the prosecution of the endeavor — the activity preceding the actual intimidation or threat.

The defendant argues that under the statute an "endeavor" is synonymous with an "attempt." He contends that his conduct as shown by the evidence amounted to nothing more than a preparation and that under the law of attempt the Commonwealth must present evidence of an overt act leading to the commission of the crime. The defendant's argument was rejected in *United States* v. *Russell*, 255 U.S. at 143. In *Russell*, the defendant approached a prospective juror's wife and inquired of her whether her husband was favorable to an acquittal, for, if he were, he might receive a bribe from the defendant. The defendant argued to the Court that his conduct did not amount to a crime because at most it was nothing more than a preparation for an attempt. The Court, however, noted that

---

[4] The Court's definition is in accord with the definition of "endeavor" found in dictionaries. In Black's Law Dictionary at 473 (5th ed. 1979) "endeavor" is defined as "To exert physical and intellectual strength toward the attainment of an object. A systematic or continuous effort."

Webster's Third New International Dictionary Unabridged at 748 (1971) defines "endeavor" as "to exert (oneself) strenuously; to strive to achieve or reach . . . ."

We know of no authority that states that "endeavor" means to reach one's objective.

[5] In *United States* v. *Russell, supra,* and in *Osborn* v. *United States, supra,* the defendants were indicted for endeavoring to bribe prospective jurors in criminal cases. The prospective jurors, in neither case, were approached by the defendants or their intermediaries. In *United States* v. *Russell, supra* at 143, the Court stated the statute under review was "not directed at success in corrupting a juror but at the 'endeavor' to do so."

the defendant was charged with a violation of a section of the Criminal Code of the United States which provided that "[w]hoever corruptly . . . shall endeavor to influence, intimidate, or impede . . . any juror . . . ." The Court stated that an "endeavor" was not the same as an attempt, and "by using [endeavor] the [statute] got rid of the technicalities which might be urged as besetting the word 'attempt' . . . ." *Ibid.* We agree with the proposition that an " 'endeavor' connotes a somewhat lower threshold of purposeful activity than 'attempt.' " *United States* v. *Lazzerini,* 611 F.2d 940, 941 (1st Cir. 1979). *United States* v. *Buffalano,* 727 F.2d 50, 53 (2d Cir. 1984). As a result, we need not reach the question whether the defendant's activities could be considered an "attempt."

In view of our interpretation of G. L. c. 268, § 13B, it was not necessary for the Commonwealth to present evidence that the defendant actually approached Isabel Poe. We have reviewed the entire evidence presented to the grand jury. It meets the *McCarthy* standard.[6] We need not decide whether the evidence would have been sufficient to overcome a motion for a required finding of not guilty at trial.[7] We are concerned here with a lesser standard than at trial. See *Commonwealth* v. *O'Dell,* 392 Mass. 445, 451 (1984) ("a requirement of sufficient evidence to establish . . . probable cause to arrest [the

---

[6] In *Commonwealth* v. *McCarthy,* 385 Mass. at 163, the court announced a rule that stated "at the very least the grand jury must hear sufficient evidence to establish the identity of the accused and probable cause to arrest him" (citations omitted). The only issue before us concerns the probable cause to arrest aspect of the rule. " 'Probable cause [to arrest] exists where "the facts and circumstances within . . . [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a [person] of reasonable caution in the belief that" an offense has been or is being committed.' *Brinegar* v. *United States,* 338 U.S. 160, 175-176 (1949), quoting from *Carroll* v. *United States,* 267 U.S. 132, 162 (1925). Probable cause requires more than mere suspicion but something less than evidence sufficient to warrant a conviction." *Commonwealth* v. *Hason,* 387 Mass. 169, 174 (1982).

[7] Several of the defendant's arguments contained in his brief appear to address the sufficiency of the evidence under the required finding of not guilty standard and not the *McCarthy* standard. We do not address those arguments.

accused] is considerably less exacting than a requirement of sufficient evidence to warrant a guilty finding").[8]

The defendant raises for the first time a claim that G. L. c. 268, § 13B, is unconstitutionally vague. He claims that the statute is vague "on its face" and also as applied to him. As to the facial attack, he offers no argument whatsoever in his brief, and we do not consider it. Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

In regard to the other prong of his vagueness attack, he claims that G. L. c. 268, § 13B, is unconstitutionally vague and ambiguous because its provisions are in conflict with the provisions of G. L. c. 276, § 55.[9] He argues that under G. L. c. 276, § 55, an offer of money to a victim of an assault and battery or other misdemeanor is lawful, yet the same offer under G. L. c. 268, § 13B, would incur criminal penalties. He claims that he never knew that Isabel Poe was a victim of an unarmed robbery; he thought that Ralph had only committed an assault and battery on her. The question of the defendant's knowledge is a question of fact for the jury. There are other factual matters that need resolution at trial. Because the constitutional issue was not raised before the motion judge and

---

[8] The conspiracy indictment also meets the *McCarthy* standard. Under Massachusetts law, conspiracy is a "combination of two or more persons, by some concerted action, to accomplish some criminal or unlawful purpose, or to accomplish some purpose, not in itself criminal or unlawful, by criminal or unlawful means." *Commonwealth* v. *Beneficial Fin. Co.,* 360 Mass. 188, 249 (1971), quoting from *Commonwealth* v. *Hunt,* 4 Met. 111, 123 (1842). An overt act is not required to complete a conspiracy. *Commonwealth* v. *Pero,* 402 Mass. 476, 478 (1988). The evidence was sufficient to support the indictment for conspiracy.

[9] General Laws, c. 276, § 55, provides in part as follows:

"If a person . . . is under indictment or complaint for . . . a charge of assault and battery or other misdemeanor for which he is liable in a civil action, unless the offense was committed . . . with intent to commit a felony, and the person injured appears before the court or justice . . . before which the indictment or complaint is pending, and acknowledges in writing that he has received satisfaction for the injury, the court or justice may in its or his discretion, upon payment of such expenses as it or he shall order, . . . discharge the defendant from the indictment or complaint, and may also . . . supersede the commitment of all witnesses in the case."

the issue requires the resolution of factual questions which are not open to us, we do not address the matter. See *Commonwealth* v. *Marchionda*, 385 Mass. 238, 242 (1982).

The order of the Superior Court judge dismissing the two indictments is vacated, and the indictments are reinstated for trial.

*So ordered.*