COMMONWEALTH *vs.* MESFINE G. BELETE.

No. 93-P-1333.

Middlesex. April 12, 1994. - October 7, 1994.

Present: JACOBS, GILLERMAN, & GREENBERG, JJ.

*Statute,* Construction. *Intimidation of Witness. Words,* "Witness."

A defendant charged with violation of G. L. c. 268, § 13B (intimidation of
a witness), arising from his attempts to dissuade a court interpreter
from appearing in court, was entitled to a required finding of not guilty
inasmuch as a court interpreter is not a "witness" within the meaning
of the statute. [425-428]

COMPLAINT received and sworn to in the Somerville Divi-
sion of the District Court Department on February 4, 1992.

On appeal to the jury session of that division the case was
heard by *Jonathan Brant,* J.

*Daniel F. Manning* for the defendant.

*Marian T. Ryan,* Assistant District Attorney, for the
Commonwealth.

GREENBERG, J. Mesfine G. Belete, the defendant, concedes
that, while a complaint against him for "operating a motor
vehicle under the influence of intoxicating liquor," see G. L.
c. 90, § 24(1)(*a*)(1), was awaiting trial in the District
Court, he contacted a court interpreter who had been ap-
pointed to render the upcoming testimony in the defendant's
native Ethiopian dialect — Amharic.[1] The complainant, a
qualified interpreter appointed by the court, testified that, at
his first court appearance involving the defendant, when the

___

[1]Rule 41 of the Massachusetts Rules of Criminal Procedure, 378 Mass.
918 (1979), provides District Court judges with authority to appoint inter-
preters. See also G. L. c. 262, § 32, as appearing in St. 1978, c. 478,
§ 273, under which "District courts may allow reasonable compensation to
interpreters . . . in criminal proceedings before them."

case was continued, he was asked by the defendant not to appear at the next scheduled trial date. The complainant further testified that the defendant contacted him by telephone with the same request. When he appeared on the scheduled date, he stated that the defendant confronted him and offered to pay him to insure that he would leave the courthouse. Other inappropriate communications followed. The question raised on appeal is whether, at the time of the offending communications, an interpreter fell within the category of persons set forth in G. L. c. 268, § 13B, as appearing in St. 1990, c. 369. Belete was convicted of violating that statute, the pertinent text of which appears in the margin.[2]

At a bench trial in the District Court, the defendant moved for a required finding of not guilty. Mass.R.Crim.P. 25(a), 378 Mass. 896 (1979). During the course of argument on the motion, the defense counsel contended that, even if the defendant's attempts to dissuade the interpreter from appearing in court constituted unlawful interference, the interpreter was not a "witness" within the meaning of the statute. The trial judge disagreed and denied the motion.

We think the judge unduly extended the scope of this penal statute. Criminal statutes are strictly construed and must give "clear warning" of the particular conduct which is proscribed. *Commonwealth* v. *Brown*, 391 Mass. 157, 159, 162 (1984).

"Words or phrases in a statute are to be given their ordinary meaning. They are to be construed according to their natural import. . . . [They] 'are to be given their ordinary lexical meaning unless there be a clear indication to the contrary.'" *Burke* v. *Chief of Police of Newton*, 374 Mass. 450, 452 (1978), quoting from *Randall's Case*, 331 Mass. 383, 385 (1954). *Hashimi* v. *Kalil*, 388 Mass. 607, 609 (1983).

---

[2]General Laws c. 268, § 13B, in pertinent part, provides:

"Whoever, directly or indirectly, willfully endeavors by means of a gift, offer or promise of anything of value or by misrepresentation, intimidation, force or threats of force to influence, impede, obstruct, delay or otherwise interfere *with any witness* or juror in any stage of a trial or other criminal proceeding . . . shall be punished by imprisonment" (emphasis supplied).

The word "witness," when used as a noun, means "[i]n general, one who, being present, personally sees or perceives a thing; a beholder, spectator, or eyewitness. . . . One who testifies to what he has seen, heard, or otherwise observed. . . . A person whose declaration under oath (or affirmation) is received as evidence for any purpose, whether such declaration be made on oral examination or by deposition or affidavit." Black's Law Dictionary 1603 (5th ed. 1979). The American Heritage Dictionary 2051 (3d ed. 1992), lists as its first meaning: "One who can give a first-hand account of something seen, heard, or experienced. . . ." In Webster's Third New Intl. Dictionary 2627 (1971), the meanings include an "attestation of a fact or an event."

We conclude that the word "witness" as used in G. L. c. 268, § 13B, is unambiguous and that court-appointed interpreters do not fall within the ambit of the statute. "It is apparent from a reading of G. L. c. 268, § 13B, that the intent of the Legislature was to protect witnesses (and jurors) in certain proceedings and to prevent interference with the administration of justice." *Commonwealth* v. *Rondeau*, 27 Mass. App. Ct. 55, 59 (1989). Had the Legislature intended to protect against any interference with the administration of justice, it could have adopted a more liberal or more encompassing approach. Interpreters are not witnesses, nor do they normally possess any knowledge of a fact or occurrence sufficient to testify in a case. Rather, "[a]n interpreter is a bilingual person who has the duty to act as the medium between the court and the non-English-speaking person." See Gonzales, Vasquez & Mikkelson, Fundamentals of Court Interpretation, 155 (1991).

The distinction has come up in a variety of contexts in the earlier cases. In *Commonwealth* v. *Vose*, 157 Mass. 393 (1892), two persons who spoke different languages conversed through an interpreter. A third person who overheard the conversation but who understood only one of the speakers was permitted to testify. In *Commonwealth* v. *Storti*, 177 Mass. 339 (1901), a stenographer who transcribed a station

house interrogation of a murder suspect where an interpreter translated the questions and answers for the defendant was permitted to testify about the session. In *Ex parte Roelker*, 20 F.Cas. 1092 (D.Mass. 1854) (No. 11,995), a Federal judge refused to issue a capias for the arrest of an interpreter to assist German-speaking witnesses on the ground that an interpreter, like an expert witness, cannot be compelled to attend proceedings and testify for an ordinary witness fee. The judge further opined that an interpreter could be found if adequate compensation were offered; no showing to the contrary had been made.

Once the current practice of using "qualified" interpreters in the courts became part of official operations, protocols developed to deal with the confusion which "obviously may arise when an interpreter is placed between the witness and counsel, [and] the judge and the jury. . . ." *Commonwealth v. Festa*, 369 Mass. 419, 429 (1976). See Grabau & Williamson, Language Barriers In Our Trial Courts: The Use Of Court Interpreters In Massachusetts, 70 Mass. Law Rev. 108 (1985).

Our conclusion is buttressed by the fact that G. L. c. 221, § 92, which authorizes the appointment of an official interpreter in court proceedings, does not require either an oath or affirmation. Similarly, under rule 604 of the Fed.R.Evid., "[a]n interpreter is subject to the provisions of [the] rules relating to qualification as an expert and the administration of an oath or affirmation that he will make a true translation."

The government's argument that the defendant transgressed the intimidation of witness statute is not supported by *Commonwealth v. Rondeau*, 27 Mass. App. Ct. 55 (1989). In that case the defendant, a police officer, was enlisted by an acquaintance to approach the complainant in a case pending against the acquaintance's son in an effort to get the charge dropped. By reason of the defendant's introduction of his acquaintance to the complainant (who was obviously a witness), we held that the defendant's "endeavors" could be construed to violate the statute, and we reversed the

granting of the defendant's motion to dismiss the indictments. *Id.* at 59. Unlike the instant case, the application of § 13B in *Commonwealth* v. *Rondeau, supra,* was in the context of determining what conduct the statute was enacted to prevent and whether the defendant himself had to have direct contact with the witness for the statute to be invoked. Here, the focus is the class of persons entitled to protection, i.e., whether the person influenced can be categorized as a witness.

Because of our construction of the statute, we hold that the defendant was entitled to a required finding of not guilty.

> *Judgment reversed.*
> *Finding set aside.*
> *Judgment for the defendant.*