# United States Court of Appeals
## For the First Circuit

No. 10-2095

MICHAEL KING,

Petitioner, Appellant,

v.

DUANE J. MACEACHERN, Superintendent,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Torruella, Boudin, and Thompson,
Circuit Judges.

Andrew S. Crouch, for petitioner-appellant.
David E. Rhinesmith, Assistant Attorney General, Criminal
Bureau, with whom Martha Coakley, Attorney General, was on brief
for respondent-appellee.

December 2, 2011

**TORRUELLA**, **Circuit Judge**.  Convicted of armed robbery, assault and battery, and intimidation of a witness, Petitioner-Appellant Michael King ("King") appeals from the federal district court's denial of his petition for a writ of habeas corpus.  King v. MacEachern, No. 08-10373, 2010 WL 3258870 (D. Mass. Aug. 17, 2010).  King's principal claim is that there was insufficient evidence to support his armed robbery and witness intimidation convictions.  For the following reasons, we affirm.

## I.  Background[1]

### A.  Midnight Robbery at the Mart

On September 9, 2003, Michael Jacques ("Jacques"), a clerk at DB Mart, a convenience store located in Springfield, Massachusetts, was working the 5:00 p.m. to 12:00 a.m. shift alone. At approximately 11:30 p.m., King, a regular customer at the mart, entered and left.  At midnight, Jacques, having completed his shift, began to close the store.  While in the process of closing, King returned.  King knocked on the now-locked doors and asked to be let in so he could look for a pager he claimed to have left

---

[1]  We set forth the facts as found in the Massachusetts Appeals Court's ("MAC") decision affirming King's conviction, Commonwealth v. King, 866 N.E.2d 938 (Mass. App. Ct. 2007). See DeBurgo v. St. Amand, 587 F.3d 61, 62 (1st Cir. 2009).  We supplement "with other facts from the record that are consistent with the [state court's] findings." Lynch v. Ficco, 438 F.3d 35, 39 (1st Cir. 2006).  We are required to "accept the state court findings of fact unless [King] convinces us, by clear and convincing evidence, that they are in error." Id. (quoting McCambridge v. Hall, 303 F.3d 24, 26 (1st Cir. 2002)).

behind during his earlier visit. Following a brief conversation, Jacques opened the door and assisted King in searching the aisles for the missing pager. The pager never surfaced. Jacques asked King to leave, recommending that he return in the morning to speak with the mart's manager.

Without warning, King punched Jacques on the left side of his face. King then tackled Jacques, placed him in a "choke hold," and knocked him to the floor and up against his bicycle, which Jacques had parked inside the store. King then tried to open the cash register. On seeing Jacques begin to get up from the floor, King warned, "I'm going to blow a hole in your head if you get up and move." Jacques, taking King at his word, resumed his prior position on the floor. He did not see King with a gun or other weapon.

King ordered Jacques to tell him how to open the cash register; Jacques complied. King removed approximately $1,400 from the cash register, took Jacques's bicycle, and before leaving, asked Jacques where the videotapes from the store's security camera were located. Jacques told him they were in the manager's office and that he did not have access to them. King warned that "[i]f he saw [Jacques] on 22 News [a Springfield television program] he was going to come back and kill [him], [his] whole family, [his] buddy Ben, all of that." King, 866 N.E.2d at 941. King then left, taking Jacques's bicycle.

-3-

Several minutes later, Jacques got up from the floor and called the police.  Officers arrived on the scene and searched the surrounding area, but to no avail; they did not find an individual matching King's description.  Further investigation, however, proved fruitful.  On September 11, 2003 -- one day after the robbery -- police apprehended King and arrested him.  No weapon was found on his person or in the nearby area at the time of arrest.

## B.  Indictment and Conviction

A grand jury indicted King for two counts of armed robbery, Mass. Gen. Laws ch. 265, § 17 (1998); one count of assault and battery, Mass. Gen. Laws ch. 265, § 13A (2002); and one count of intimidation of a witness, Mass. Gen. Laws ch. 268, § 13B (2010).  A jury trial was held, at which the trial judge merged the two armed robbery charges.  The jury convicted King of all three charges.  The court sentenced King to a term of not more than six years and not less than five years for the armed robbery conviction, and to two concurrent one-year terms for the assault and battery and intimidation of a witness convictions.

## C. Challenging the Conviction: Seeking Appellate and Habeas Relief

King first appealed his conviction to the MAC.  See King, 866 N.E.2d 938.  He raised three arguments: (1) the trial judge improperly denied King's motion for a required finding of not guilty as to the armed robbery charge because there was insufficient evidence showing he was in possession of a weapon at

the time of the robbery; (2) the trial judge wrongly denied King's motion for a required finding of not guilty as to the intimidation of a witness charge because the evidence did not show he intimidated a person furnishing information to a criminal investigator; and (3) the trial judge improperly broadened the scope of the witness intimidation statute in administering the jury instructions. The MAC affirmed King's convictions. King, 866 N.E.2d at 940.

Addressing each argument, the MAC held that (1) the evidence at trial established that King threatened to shoot the victim, that he was arrested a day later without a weapon, and thus, the jury's inference that King actually had a weapon when he threatened Jacques was not improper, id. at 943-44; (2) King construed the witness intimidation statute too narrowly; the jury, in evaluating the evidence and the circumstances in which King's statement was made, rationally could have determined that King intended to intimidate Jacques from providing an official investigating authority information related to the robbery, id. at 944-45; and (3) the trial judge's instructions were proper[2] as the

---

[2]   One of the judge's challenged instructions provided that a victim under the witness intimidation statute constituted one "who was to be a person furnishing information to a criminal investigator about a criminal offense." King, 866 N.E.2d at 945. Another challenged instruction of the trial judge's stated that the defendant acted "with the specific intent of influencing, impeding, obstructing, delaying or otherwise interfering with that person as a potential witness." Id. King argued that a conviction under the witness intimidation statute could not stand on the mere

witness intimidation statute does not require that a victim actually be in the process of furnishing information when threatened. King, 866 N.E.2d at 945-46.

King then turned to the Massachusetts Supreme Judicial Court ("SJC") to challenge the MAC's determinations, filing an application for leave to obtain further appellate review ("ALOFAR"). He raised two arguments. He first asserted that the MAC erred in holding that a defendant may be convicted of armed robbery based solely on a statement that he would "blow a hole" in a victim's head, with no additional direct or circumstantial evidence confirming the existence of a weapon at the scene of the alleged crime. Second, he argued that the MAC "too broadly interpret[ed] the witness intimidation statute's 'criminal investigator' prong to include an instance where a defendant warned a victim not to speak with the television broadcast media." The SJC denied King's ALOFAR. Commonwealth v. King, 871 N.E.2d 491 (Mass. 2007).

Thereafter, a federal district court evaluated King's habeas petition pursuant to 28 U.S.C. § 2254, considering only the two issues submitted before the SJC, i.e., whether the state court's decision constituted an unreasonable application of federal law because there was insufficient evidence showing either that he

---

possibility that a victim might provide information to authorities in the future. The MAC rejected this argument. Id.

-6-

was armed with a dangerous weapon at the time of the alleged armed robbery, or that he intimidated a person furnishing information to a criminal investigator.[3]  The court ultimately denied relief, holding the MAC had not unreasonably applied clearly established Supreme Court precedent.[4]  It subsequently granted a certificate of appealability as to King's remaining two claims, i.e., insufficient evidence to support the armed robbery and witness intimidation charges.  King v. MacEachern, No. 08-10373-NMG, 2010 WL 5373933, at *1 (D. Mass. Dec. 20, 2010).

## II.  Discussion

Just as a builder cannot lay his first brick without a blueprint, we begin our analysis by sketching the applicable

---

[3]  King initially raised a third issue for habeas review, asserting that the trial judge improperly instructed the jury and effectively expanded the scope of the witness intimidation statute.  King subsequently withdrew his third claim because he failed to properly exhaust it in state court as required by 28 U.S.C. § 2254(b).

[4]  Before the district court considered King's habeas petition, King filed a motion for summary judgment as to his armed robbery and witness intimidation claims.  Respondent-Appellee opposed and cross-motioned for summary judgment.  The matter was referred to a magistrate judge, who recommended that summary judgment be denied on King's remaining two claims following his withdrawal of a third claim pertaining to jury instructions.  The district court endorsed the magistrate judge's recommendation as to denial of summary judgment and referred the case back to the magistrate judge for a report and recommendation on the merits as to King's habeas petition.  The magistrate judge concluded that the MAC's decision was not an unreasonable application of clearly established federal law and recommended  that habeas relief be denied and the petition dismissed.

-7-

framework for federal habeas review of state-court convictions.  We then address each of King's constitutional claims in turn.

## A.  Standard of Review

A habeas petitioner asserting an unreasonable application of federal law claim stands at the base of a very steep mountain, which we scale alongside him -- ever mindful that our accompanying alpinist is on different footing than most appellees and must surmount "'a substantially higher threshold' for obtaining relief than de novo review."  Renico v. Lett, 130 S. Ct. 1855, 1862 (2010) (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)) (noting this "substantially higher threshold" in the context of a habeas petitioner's unreasonable application of federal law claim under § 2254(d)(1)).  We begin our ascent.

"We review the district court's denial of habeas relief de novo."  Shuman v. Spencer, 636 F.3d 24, 30 (1st Cir. 2011) (quoting Lynch, 438 F.3d at 44).  In conducting this review, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") mandates that we remain highly deferential towards the state court's decision if it adjudicated the relevant claim on the merits.  See Clements v. Clarke, 592 F.3d 45, 52 (1st Cir. 2010); Rashad v. Walsh, 300 F.3d 27, 34 (1st Cir. 2002) (citing Lindh v. Murphy, 521 U.S. 320, 322, 336 (1997)).  Because  King's claim was adjudicated on the merits by the state court, we may only grant relief if the state court proceeding:

-8-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

King's underlying claim is one of insufficient evidence, calling upon a federal constitutional rule derived from the Due Process Clause of the Fourteenth Amendment and set forth in Jackson v. Virginia, 443 U.S. 307 (1979). See Sivo v. Wall, 644 F.3d 46, 50 (1st Cir. 2011).[5] Specifically, King asserts that the state court's decision constituted an unreasonable application of Jackson because the Commonwealth failed to prove by sufficient evidence that he was armed with a dangerous weapon at the time of the alleged armed robbery, or that he intimidated a person furnishing information to a criminal investigator. Jackson requires that we address "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable

---

[5] In evaluating King's arguments as to the sufficiency of the evidence presented at trial, the MAC relied on Commonwealth v. Latimore, 393 N.E.2d 370, 374-75 (Mass. 1979), which applies the sufficiency standard set forth by the Supreme Court in Jackson, 443 U.S. at 313-16. See Hurtado v. Tucker, 245 F.3d 7, 12 (1st Cir. 2001) (noting that Latimore "appl[ies the] test articulated by the Supreme Court in [Jackson]").

-9-

doubt." Jackson, 443 U.S. at 319. We must take "credibility determinations and competing factual inferences . . . in favor of the verdict." Tash v. Roden, 626 F.3d 15, 20 (1st Cir. 2010) (citing Jackson, 443 U.S. at 326). This Circuit has recognized that "in practice the Jackson standard is higher and is rarely met where there is plausible evidence to support a verdict." Id.

Because King asserts that the lower court unreasonably applied the sufficiency standard as set forth in Jackson -- making no arguments that the state court rulings are contrary to Supreme Court precedent -- our analysis is governed by the provisions of § 2254(d)(1). See Foxworth v. St. Amand, 570 F.3d 414, 424-25 (1st Cir. 2009) (providing "[t]his is an 'unreasonable application' case; no colorable arguments are made suggesting that the relevant state-court rulings are directly 'contrary to' clearly established Supreme Court precedent"). To show an unreasonable application of federal law, "[s]ome increment of incorrectness beyond error is required." Jewett v. Brady, 634 F.3d 67, 74 (1st Cir. 2011) (quoting McCambridge, 303 F.3d at 36) (internal quotation marks omitted); see also Williams v. Taylor, 529 U.S. 362, 410 (2000) (cautioning that "an unreasonable application of federal law is different from an incorrect application of federal law"); Kibbe v. DuBois, 269 F.3d 26, 36 (1st Cir. 2001) ("[A] federal court cannot grant habeas relief simply because it disagrees with or finds error in the state court's application of federal law.").

-10-

The SJC, Massachusetts' highest court, denied King's ALOFAR. We therefore must "look through to the last reasoned decision" in evaluating the basis for the state court's holding. Clements, 592 F.3d at 52 (quoting Malone v. Clarke, 536 F.3d 54, 63 n.6 (1st Cir. 2008) (internal quotation marks omitted)). Accordingly, we turn to the MAC's decision in King, 866 N.E.2d 938, to assess King's sufficiency of the evidence claims, remaining ever alert to the fact that we review each of his two claims with reference to the specific elements of the contested state law offense. See DeBurgo, 587 F.3d at 68-69.

## B. Sufficiency of the Evidence

### 1. Armed Robbery

King argues the MAC improperly affirmed his conviction for armed robbery because the evidence at trial showed he at most made a verbal threat during the robbery, which he contends was not sufficient on its own to satisfy the elements of armed robbery (specifically, possession of a weapon) under Massachusetts law, and that no rational juror could have found otherwise. For the following reasons, we hold that the MAC's determination that a rational juror could have found King possessed a weapon at the time of the robbery was not objectively unreasonable. We first address the underlying state law at issue, i.e., what are the elements of armed robbery that a jury must find in order to convict a defendant? We then turn to the MAC's determination that the

-11-

government presented sufficient evidence at trial to allow a rational juror to infer the existence of the essential elements of armed robbery.

### a. State Law: Requisites to an Armed Robbery

Massachusetts law defines armed robbery as when a person, "armed with a dangerous weapon, assaults another and robs, steals or takes from his person money or other property which may be the subject of larceny." Mass. Gen. Laws ch. 265, § 17. Thus, for an individual to be convicted of armed robbery under Massachusetts law, the jury must conclude that (1) the individual committed a robbery, <u>and</u> (2) commissioned the crime while in possession of a weapon.[6] <u>See</u> <u>Commonwealth</u> v. <u>Tevlin</u>, 741 N.E.2d 827, 833 (Mass. 2001). Notably, in analyzing the elements of armed robbery pursuant to the statute, Massachusetts courts have not required a showing that a weapon have been fired, employed to effectuate the robbery, used in a threatening manner, or even generally or openly displayed during the crime for a defendant to be convicted of armed robbery.[7]

---

[6] King only disputes whether the government satisfied its evidentiary burden of showing he was armed at the time of the robbery; he does not dispute his involvement in the underlying robbery itself.

[7] <u>See</u>, <u>e.g.</u>, <u>Commonwealth</u> v. <u>Chapman</u>, 186 N.E.2d 818, 821 (Mass. 1962) (finding no error where judge, in reading armed robbery charge to jury, provided that a finding of guilt did not require a showing that the alleged weapon "played any part -- direct part in this operation"); <u>Commonwealth</u> v. <u>Nickologines</u>, 76 N.E.2d 649, 651 (Mass. 1948) ("It is not necessary to show the use of a dangerous

-12-

In addition to not requiring an actual showing of a gun's presence at the scene of the robbery, Massachusetts law permits a jury to take a party "at his word" and rely on a defendant's statement made during the commission of a crime that he is armed with a weapon to be a highly probative factor towards establishing possession -- even if no evidence shows a defendant used or displayed a weapon during the offense. Commonwealth v. Delgado, 326 N.E.2d 716, 718-19 (Mass. 1975) (stating that where defendant warned robbery victim that he "would and could shoot . . . thus impliedly informing the victim of the presence and possession of a gun . . . the jury could reasonably conclude that the defendant should be taken at his word," even where "there was no direct evidence of a gun, no gun was seen by the store manager, and no gun was found on the defendant's person or in the area when the defendant was apprehended").[8]

weapon in proving the offence of robbery while armed. The gist of the offence is being armed, not the use of the weapon."); Commonwealth v. Simpson, 766 N.E.2d 84, 86 (Mass. App. Ct. 2002) (noting that armed robbery under Massachusetts law "may be made out by proof that the defendant was in possession of a weapon in the course of a robbery but did not display or use it"); Commonwealth v. Goldman, 367 N.E.2d 1181, 1182 (Mass. App. Ct. 1977) (stating that Mass. Gen. Laws ch. 265, § 17 does not require that a victim be aware of an assailant's possession of a weapon for the latter to be guilty of armed robbery).

[8] One post-Delgado decision that has challenged the case's holding is Commonwealth v. Howard, 436 N.E.2d 1211 (Mass. 1982). In this case, the defendant approached his victim at night with his right hand in his jacket and said, "[w]alk straight, look down, and don't try anything foolish or I'll pull the trigger." Id. (internal quotation marks omitted). The Howard court held that "where a

-13-

Furthermore, even if no evidence actually establishes that a gun was on a defendant at the time of the robbery, if a defendant feigns or asserts he is armed at the time of the crime and, between its occurrence and his apprehension, has a subsequent opportunity to dispose of the weapon, Massachusetts courts have held that a rational juror may reasonably conclude that a defendant was armed during the robbery beyond a reasonable doubt. See Commonwealth v. Samuel Jackson, 647 N.E.2d 401, 406 (Mass. 1995) (holding that, where defendant's conduct and words at time of crime -- specifically, defendant's hand in jacket creating suggestive weapon-like appearance while stating, "I'll blow you away" -- suggested he was armed, and where defendant had opportunity between the crime and the arrest to dispose of any such weapon, "there is

---

robber had no instrumentality at all [during the time of the crime], although he said he had a gun, a conviction of armed robbery is not warranted." Id. at 1212.

Subsequent courts comparing Delgado and Howard have noted a significant distinction between the facts of each case: although both cases concern a defendant who represented having a gun in his possession at the time of a crime, the defendant in Howard was arrested during the robbery, at which time police were able to confirm that the defendant was not in fact armed during the crime; in contrast, the defendant in Delgado had an opportunity between the robbery itself and the subsequent arrest to dispose of the alleged weapon. See Commonwealth v. Samuel Jackson, 647 N.E.2d 401, 406 (Mass. 1995) (comparing and reconciling the Delgado and Howard holdings); see also Howard, 436 N.E.2d at 1212 (stating that, because there was no opportunity for the defendant to dispose of a weapon between the crime and the police's sudden arrival and arrest, there was an "absence of any basis to infer that the defendant may have had a gun[, which] distinguishes this case from [Delgado]").

-14-

no reason [for a juror] not to take an assailant at his word" and to conclude he was armed during the robbery); cf. Howard, 436 N.E.2d at 1212 (providing that where defendant's conduct and words at time of crime suggested he was armed, but where defendant had no opportunity between crime and arrest to dispose of weapon, and where police immediately were able to confirm defendant was not in fact armed during the crime, "[t]he evidence would not have warranted the jury in finding, on the basis of a reasonable inference and beyond a reasonable doubt . . . that the defendant had a gun").

Thus, in sum, under Massachusetts law, a juror may -- but is not required to -- rationally conclude that a defendant was armed during a robbery -- even if no evidence directly shows the defendant in fact was armed -- if (1) a defendant represents (through words and/or conduct)[9] that he is armed at the time of the

---

[9]  Conduct that has been deemed sufficient for purposes of supporting an armed robbery conviction or similar offense includes the brandishing of what reasonably appears to be a weapon during the crime, or creating the suggestive appearance of a gun on one's person. See, e.g., Commonwealth v. Powell, 742 N.E.2d 1061, 1063 (Mass. 2001) (affirming conviction for armed robbery where victim observed an object under defendant's jacket, which defendant repeatedly touched, even though protruding tip of object made it unclear as to whether it was in fact a weapon); Commonwealth v. Henson, 259 N.E.2d 769, 772-74 (Mass. 1970) (upholding conviction for aggravated assault where defendant brandished a firearm, even though firearm was loaded with blank cartridges and was known by defendant to effectively be unloaded); Commonwealth v. Colon, 756 N.E.2d 615, 618-19 (Mass. App. Ct. 2001) (evidence supported conviction for armed robbery where defendant placed his hand in pocket on a shiny object that the victim believed was a weapon because it appeared to be made of chrome or metal); Commonwealth v.

-15-

crime, or (2) makes such a representation and has an opportunity following the commission of the crime to dispose of the alleged weapon before his subsequent arrest. Having reviewed the underlying state law at issue, we now turn to the state court's determination that a rational juror could have found King liable of armed robbery to determine whether its holding constituted an unreasonable application of Jackson because, based on the evidence presented at trial -- which we review through government-favored lenses -- no rational trier of fact could have found the essential elements of armed robbery beyond a reasonable doubt. For the following reasons, we hold that the MAC's decision did not constitute an unreasonable application of federal law.

### b. State Court Decision: No Unreasonable Application of Federal Law

The MAC correctly articulated Massachusetts law as to armed robbery, providing that convictions for armed robbery "are not limited to instances in which a defendant actually uses or displays the weapon." King, 866 N.E.2d at 941. Further, the MAC accurately noted the highly probative nature under Massachusetts

---

Johnson, 543 N.E.2d 22, 23-24 (Mass. App. Ct. 1989) (finding that a hairbrush in a pocket, creating the reasonable appearance of a weapon, supported a conviction of armed assault with intent to rob); Commonwealth v. Garafolo, 499 N.E.2d 839, 841 (Mass. App. Ct. 1986) (upholding conviction for armed assault with intent to rob where evidence showed defendant assaulted victim with a toy gun); Commonwealth v. Nicholson, 477 N.E.2d 1038, 1044 (Mass. App. Ct. 1985) (noting that armed robbery may be committed with a "fake plastic gun" if "it reasonably appeared capable of inflicting bodily harm").

law of a defendant's statement that he is armed during a robbery for purposes of assessing the rationality of a jury's findings. See id. at 942-43.  It also acknowledged some tension between Delgado and Howard, but clarified their holdings pursuant to established state law:

> Reading Delgado and Howard together, however, the Commonwealth may obtain a verdict by proof of such a statement together with evidence that the defendant had an opportunity to dispose of the weapon prior to his arrest.  It is that latter evidence [of an opportunity to dispose of the weapon] that permits the jury to draw the inference that the defendant should be taken at his word. . . . Such a case is distinguished from a case in which the defendant is apprehended at the scene and found to have no weapon.  In such a situation, there is no basis on which a juror could rationally conclude that the defendant was armed.

Id. (internal citation omitted).

Applying governing Massachusetts law to the record, and viewing all evidence in a light most favorable to the government, the MAC held that a reasonable juror could have found King had a gun at the time of the robbery.  Id. at 943.  Indeed, in reviewing the facts, the MAC specifically noted the defendant's warning to the victim, "I'm going to blow a hole in your head if you get up and move," id. at 941, and the one day lapse of time between the robbery and the defendant's arrest, id., as evidence supporting the jury's finding.  See id. at 943 ("[W]e conclude that the jury's inference that the defendant actually carried a dangerous weapon at

the time of the robbery was permissible. The evidence supported findings that the defendant threatened to shoot the victim, and that he was arrested a day later without a weapon. Thus, the jury could, if they wished, find that he in fact had a weapon when he made the threat.").

King attempts to counter such circumstantial evidence by arguing that a conviction for armed robbery under Massachusetts law cannot stand on a defendant's verbal statement alone; stated differently, where no evidence established that a defendant made "any gesture or behavior to indicate the presence of a weapon," or "where the defendant's hands could not be seen" during the crime, and "where the arrest of the petitioner did not take place at the scene of the offense," King contends that a "conviction for armed robbery is not based on legally sufficient evidence and violates the protections of the Due Process Clause of the Fourteenth Amendment." As our prior review of governing state law on armed robbery shows, this is not a correct articulation of Massachusetts law.

Without belaboring the point, Massachusetts courts have held that a conviction for armed robbery may stand, even if a defendant does not display a weapon during the robbery or make a gesture indicating possession of the same, provided that other evidence creates a reasonable inference that a defendant was armed at the time of the crime. See, e.g., Samuel Jackson, 647 N.E.2d at

-18-

406 (upholding armed robbery conviction where defendant never displayed or used a weapon during commission of crime; holding that a jury could reasonably determine defendant was armed based on his "I'll blow you away" statement, coupled with his subsequent "opportunity to dispose of the gun before he was arrested"); see also Delgado, 326 N.E.2d at 719 (noting that no gesture is per se required to permit an armed robbery conviction to stand because a defendant's warning statement may be "informational" and "take the place of a threatening movement or gesture and complete the assault").

Although King heavily rests his no-gesture-no-weapon position upon the crutch of Howard's holding, Howard offers King little support because in that case, there was no room for any inference but that the defendant was not armed at the time of the robbery, as the defendant was apprehended at the scene of the crime with no weapon on his person. See 436 N.E.2d at 1212. Here, the established facts do not require such a finding, as there was a day lapse between the crime and King's arrest.

It is where indisputable evidence ends that the role of the fact finder truly begins; the question of whether King possessed a weapon at the time of the robbery was a question best left to the jury's jurisdiction. In light of governing Massachusetts law and the established record, we cannot say the MAC's determination that a rational juror could have inferred King

-19-

was armed at the time of the robbery constituted an "unreasonable application" of Jackson. See DeBurgo, 587 F.3d at 69 ("[G]iven the sufficiently suggestive circumstantial evidence presented at trial, we are satisfied that the [state court's] analysis of the sufficiency of the evidence was not an unreasonable application of the Supreme Court's standard announced in Jackson."); see also Hurtado, 245 F.3d at 18-19 (noting that "[w]here it is a matter of what inferences may be drawn" by the jury, if "the argument over the correctness of the state court's ultimate conclusion is one of degree calling for a choice between credible (although mutually opposed) views, the habeas inquiry on objective unreasonableness ends").

## 2. Intimidation of a Witness

King also contests the MAC's determination that there was sufficient evidence to support his conviction for witness intimidation on two grounds: (1) the witness intimidation statute is limited to those witnesses who are in the active process of attempting to communicate with the police, or who have expressed a present intent to do so; that is, it does not apply to future communications; and (2) King's warning that he did not want to see the victim on the local television news was solely intended to discourage Jacques from describing the transpired events to the media; it did not qualify as an interference with the "furnishing [of] information to a criminal investigator" because news media are

-20-

not included within the statute's definition of a "criminal investigator."  We hold that the MAC's conclusion that a rational juror could have inferred from King's statement that he feared Jacques might report the robbery and thus threatened him in order to prevent any future communications about the crime, particularly to investigating authorities, was not objectively unreasonable.

### a.  State Law: How to Intimidate a Witness (and Not Get Away With It)

Under governing Massachusetts law at the time of the robbery,[10] an individual could be guilty of intimidating a witness through two means: (1) "directly or indirectly, willfully" interfering "with any witness or juror in any stage of a trial, grand jury or other criminal proceeding;" or (2) "directly or indirectly, willfully" interfering "with any person furnishing information to a criminal investigator relating to a violation of a criminal statute of the commonwealth."  Mass. Gen. Laws ch. 268, § 13B, as amended by St. 1970, ch. 177.  Additionally, the statute defined a criminal investigator as "an individual or a group of individuals lawfully authorized by a department or agency of the commonwealth or any political subdivision thereof to conduct, or engage in, an investigation of, or prosecution for, a violation of the laws of the commonwealth in the course of his official duties."

---

[10]  In 2006, the Massachusetts legislature revised section 13B of Mass. Gen. Laws ch. 268.  However, according to the Appeals Court, the amendments did not substantively alter the meaning of the prior statute for purposes of our review.  King, 866 N.E.2d at 944 n.5.

*Id.* Because King's statement was made during the armed robbery itself, before the start of any pre-trial or trial proceedings, the government pursued a conviction under the statute's second definition of intimidation, *i.e.*, "furnishing information" to an investigator.

Massachusetts courts applying the pre-2006 amendment version of the witness intimidation statute have recognized that its purpose is to "deter[] interference with <u>future</u> communication of information.'" <u>Commonwealth</u> v. <u>Burt</u>, 663 N.E.2d 271, 274 (Mass. App. Ct. 1996) (quoting <u>United States</u> v. <u>San Martin</u>, 515 F.2d 317, 320 (5th Cir. 1975) (internal quotation mark omitted)); <u>see also</u> <u>Commonwealth</u> v. <u>McCreary</u>, 702 N.E.2d 37, 39 (Mass. App. Ct. 1998) (providing that the statute is intended "to protect witnesses from being bullied or harried so that they do not become reluctant to testify or to give truthful evidence in investigatory or judicial proceedings. The larger purpose is to prevent interference with the administration of justice"). Additionally, Massachusetts courts have noted that the legislature created "a somewhat lower threshold of purposeful activity" for what may suffice to constitute witness intimidation. <u>Commonwealth</u> v. <u>Belle Isle</u>, 694 N.E.2d 5, 8 (Mass. App. Ct. 1998) (internal quotation mark omitted) (noting that the statute's use of the word "endeavor" signified the legislature's intent "to punish <u>any</u> wilful conduct that amounted to an effort to interfere with a potential witness" (emphasis added)).

-22-

Lastly, the statute casts a broad net, sweeping in intimidating acts that occurred before the commencement of any formal criminal proceedings, Belle Isle, 694 N.E.2d at 7-8, as well as instances in which a witness did not immediately report to a criminal investigator, Burt, 663 N.E.2d at 274.

Thus, pursuant to Massachusetts law, a juror assessing a defendant's alleged intimidation of a witness should consider the complete context of events -- i.e., the potential purpose of the defendant's actions towards the witness, which may be assessed by evaluating the "place, time, and circumstances" surrounding the underlying acts, Commonwealth v. Robinson, 825 N.E.2d 1021, 1028-29 (Mass. 2005) (quoting McCreary, 702 N.E.2d at 39) (internal quotation marks omitted) -- bearing in mind that there is a "somewhat lower threshold" for what may rise to an intimidatory act, and further, that the statute's scope expands beyond the trial stage and includes a witness's future statements to police.

Having laid the applicable legal foundation, we now address the MAC's holding that a rational juror could have found King liable of witness intimidation to assess whether the evidence, reviewed drawing all inferences in the government's favor, was sufficient to support the jury's verdict. We hold that it was, and that the MAC's determination was not an unreasonable application of Jackson's sufficiency standard.

-23-

## b. State Court Decision: Sufficiency of the Witness Intimidation Evidence

The MAC correctly articulated Massachusetts law on witness intimidation, stating that pursuant to the statute, "[a] fact finder may evaluate the circumstances in which the statement was made, including its timing, to determine whether the defendant in fact intended to intimidate the victim"; that "[a] criminal investigation need not have commenced" for the statute to be applicable; and that a victim need not "be furnishing information on the day that the intimidating action [was] taken or statement made" for the statute's provisions to be triggered. King, 866 N.E.2d at 944-45. The MAC noted that the determination of whether a statement constitutes a threat against a witness must be made by considering a statement's underlying "purpose of 'deterring interference with future communication of information [by a witness].'" Id. at 945 (quoting Burt, 663 N.E.2d at 278). On reviewing and applying the governing law to the facts, and examining all evidence in a light most favorable to the government, the MAC held that a rational juror could "reasonably conclude from the surrounding circumstances that it was likely that the victim would furnish to an official investigating authority information pertaining to the crime and that the defendant intended to discourage such communication." Id.

In its review of the record, the MAC carefully noted the following factual "surrounding circumstances:" King's specific

-24-

statement that "[i]f he saw [the victim] on 22 News [a Springfield television program] he was going to come back and kill [him], [his] whole family, [his] buddy Ben, all of that," id. at 944; that King made the statement during the robbery; that King's statement followed his punching of the victim, placing him in a choke hold, knocking him to the floor, threatening to shoot him, and ordering him to explain how to open the register; and that prior to making the threat, King had tried to obtain access to the store's security surveillance videotapes, which the victim said he could not provide because the videotapes were kept in the manager's office to which he did not have access. Id. at 940-41. Given these circumstances, the MAC held that the "jury could reasonably infer that the defendant's reference to television news was a shorthand recognition that a broadcast featuring the victim would most likely come about if the victim reported the robbery to the police," that "it was the defendant's purpose to prevent that communication on the part of the victim," and that "such a finding by the jury was plainly warranted." Id. at 944. Having reviewed the record ourselves and the reasons provided by the MAC in its decision, we hold that it was reasonable for the MAC to conclude that a rational juror could have determined there was sufficient evidence supporting a conviction for witness intimidation under Massachusetts law.

King challenges the MAC's decision with two arguments, both of which dwindle in the face of established precedent and fail to show an unreasonable decision on the part of the state court. First, King submits that the witness intimidation statute only applies to witnesses who are currently trying to communicate with the police or who have represented an intent, either in the past or present, to so communicate.[11]   Thus, because Jacques was not communicating with the police or attempting to so communicate at the time of King's threat, no rational juror could have found that King intimidated a witness pursuant to the terms of section 13B.

King relies on the MAC's previous decision in Belle Isle, in which the defendant impeded the attacked victim's wife from contacting authorities after she had expressed her intent to call the police.  694 N.E.2d 5.  King contends that Belle Isle requires a showing of a targeted witness's present intent at the time of the defendant's threat to contact investigating authorities in order for the witness intimidation statute to be triggered.

Belle Isle is not the authoritative haven in which King should seek refuge; nowhere did the Belle Isle court require a

---

[11]   Specifically, King asserts that "the witness intimidation statute does not protect what individuals may do in theory, namely that they may choose to speak with police in the future, but instead implicates what they are presently attempting to do, have stated an intention to do, or what they have already done. . . . [A]t no point in the present case did the victim announce his intention to speak with any criminal investigator, nor did he make any attempts to contact the police."

showing of a witness's present intent to communicate with authorities for the witness intimidation statute to be applicable. See Belle Isle, 694 N.E.2d at 8 (simply holding that "[a] reasonable jury could have found that by following [the victim's wife] from the room when she stated she was going to call the police, and using force to sever the phone cord from the wall, [the defendant] forcefully interfered with [her] attempt to furnish information to the police"). Here, the MAC similarly considered and rejected King's reliance on Belle Isle, correctly stating that the decision "was not intended to suggest that an attempt to communicate to authorities must be underway in order for there to be a violation of G.L. c. 268, § 13B," King, 866 N.E.2d at 945, and accurately noting that it had rejected such a proposition previously in Burt, 663 N.E.2d at 274 (rejecting defendant's argument that because the attacked witness "was not furnishing information to the police on the day she allegedly was intimidated, the statute [was] not satisfied"). King, 866 N.E.2d at 945.

We agree with the MAC's well-reasoned explanation on this issue: King's proposed interpretation effectively shoehorns the witness intimidation statute's language into the narrow confines of a witness's presently ongoing or expressed attempts to communicate to a criminal investigator; the statute is not so constricting. King, 866 N.E.2d at 945 (stating that the statute's underlying purpose is to "deter[] interference with future communication of

-27-

information. . . . A criminal investigation need not have commenced[, n]or must the victim be furnishing information on the day that the intimidating action is taken or statement made" (internal citation and quotation marks omitted)). Having noted and corrected King's effort to hammer the statutory language peg into a narrower present-or-past-communications-only hole, and having reviewed relevant precedent and the evidentiary record, it was entirely reasonable for the MAC to conclude that a rational juror could have found that King feared Jacques, once certain that King had left the store, would report the robbery, and that King made the threat to discourage such from occurring.

Turning to King's second argument, King contends that his threatening statement was limited to preventing the victim from reaching out to the news media; because he did not try to impede Jacques from talking to criminal investigators, the witness intimidation statute is inapplicable.

In brief, case law makes clear that a defendant's threat does not have to expressly reference the police or other form of criminal investigator in order to trigger the prohibitions of the witness intimidation statute. See Burt, 663 N.E.2d at 273 (finding that defendant's statements, in which he questioned the victim concerning her children and revealed personal details as to them, "were sufficient to constitute an 'endeavor' to influence [the victim] by means of 'threats' or 'intimidation'"); McCreary, 702

-28-

N.E.2d at 39 ("[a]ssuming intimidation by the defendant . . . for which there was ample evidence," where defendant moved close to victim and threatened to kick the victim and/or his son in the head); see also Commonwealth v. Gordon, 694 N.E.2d 2, 4-5 (Mass. App. Ct. 1998) (finding that evidence was sufficient to show intimidation of a juror where defendant stood close to juror and stated he recognized her, had been watching her, asked personal details concerning her life, and suggested she watch a movie that was extremely violent).[12]

---

[12] Although King cites to both Belle Isle and Commonwealth v. Belete, 640 N.E.2d 511 (Mass. App. Ct. 1994) for authoritative support for the principle that a defendant's threat must be directed against a victim's direct "furnishing [of] information" to the police, neither serves as the nail on which he may hang his case. For instance, in Belle Isle, the defendant violently attacked his brother-in-law in the presence of family members and severed the phone cord to prevent the victim's wife from contacting the police after she had expressed her intent to call them. 694 N.E.2d at 8. At no point did the defendant expressly order or threaten the victim against calling the police; however, the state court determined that the evidence was sufficient for the jury to infer that defendant's display of force in cutting the phone wire was defendant's manner of deterring the victim from contacting the police.

Likewise here, defendant did not expressly prohibit the victim from contacting the police; instead, his various displays of force -- including punching the victim, knocking him to the ground, putting him in a choke hold, demanding to see the surveillance tapes, taking the victim's only form of transportation (his bicycle) from the store -- and his violent admonition against contacting the media served as telling circumstantial evidence, of which the MAC took careful note, suggesting that defendant intended to prevent the victim from reaching out to criminal investigators concerning the robbery. King, 866 N.E.2d at 944-45.

Belete similarly offers little support to King, as the case specifically addressed whether a witness's interpreter fell within

-29-

Moreover, the specific terms of the statute do not require that the threat be so limited in its scope; rather, it simply requires that the individual's statement "directly or indirectly" interfere with or hinder a criminal investigation. See Mass. Gen. Laws ch. 268, § 13B(1). Indeed, the MAC carefully noted the statute's broader sweep, providing that the statute "does not require that a defendant specifically articulate a threat not to speak to the police or other criminal investigator" for a defendant to be held liable of witness intimidation. King, 866 N.E.2d at 944.

Reviewing the evidence and "surrounding circumstances" in the light most favorable to the prosecution, there was sufficient evidence for a rational juror to conclude that King's statement -- made after he had assaulted, beaten, and threatened to shoot the victim, requested access to security tapes, and taken the victim's bicycle -- was made with the intent to prevent the victim from future dissemination of information or evidence concerning the crime to relevant authorities. For these reasons, the MAC's decision does not constitute an unreasonable application of Jackson.

_____

the parameters of the witness intimidation statute; the state court held that such a party did not because "[i]nterpreters are not witnesses, nor do they normally possess any knowledge of a fact or occurrence sufficient to testify in a case." 640 N.E.2d at 512. The underlying issue in Belete is thus distinguishable from King's argument that a certain level of specificity or detail is required in an intimidating act to trigger the prohibitions of the statute.

### III. <u>Conclusion</u>

For the foregoing reasons, the MAC's decision in this case was not unreasonable under AEDPA.  We thus affirm the district court's decision to deny King a writ of habeas corpus.

**<u>Affirmed</u>**.